[No. A101829. First Dist., Div. Two. Feb. 10, 2004.]

DAN HAMBURG et al., Plaintiffs and Appellants, v.
WAL-MART STORES, INC., et al., Defendants and Respondents.

498

COUNSEL

Law Offices of Mark E. Merin and Mark E. Merin for Plaintiffs and Appellants.

Phillips Spallas & Fotouhi, Robert K. Phillips and Ryan T. Dunn for Defendants and Respondents.

OPINION

KLINE, P. J.—

## INTRODUCTION

Appellants, who were conducting a protest at respondent Wal-Mart's business premises in Ukiah, were arrested for trespass after they refused to leave. They commenced this action for false arrest and violation of constitutional rights against Wal-Mart and the store manager who made the arrests as a private person. (Pen. Code, § 837.) Respondents moved for summary judgment and the motion was granted by the trial court, which thereupon dismissed the complaint.

Relying upon *Robins v. Pruneyard Shopping Center* (1979) 23 Cal.3d 899 [153 Cal.Rptr. 854, 592 P.2d 341], and its progeny, particularly *Union of Needletrades, etc. Employees v. Superior Court* (1997) 56 Cal.App.4th 996 [65 Cal.Rptr.2d 838] (*Needletrades*), the court determined that respondent's "time, place and manner" restrictions were as a matter of law reasonable on their face and constitutional, and that appellants' failure to comply with those restrictions constituted a complete defense to appellants' claims.

The facial reasonableness of the restrictions is not, in our view, the dispositive consideration. (Without deciding the issue, we shall for purposes of this appeal assume Wal-Mart's "time, place and manner" restrictions are facially constitutional.) Because the trial court failed to address the issues directly framed by the pleadings, and the evidence does not establish the absence of triable issues of material fact (Code Civ. Proc., § 437c), we shall reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Respondent Wal-Mart owns and operates the largest retail store in the City of Ukiah. The stand-alone structure, which has 104,000 square feet of floor space, is located within a complex that includes other "big box" outlets, whose parking areas are each commonly used by customers of other stores. The parking lot adjacent to the Wal-Mart store is located on the west side of the structure in front of its main entrance. The parking lot is separated from the store by a driveway, a median, and a wide sidewalk that runs along the side of the building. Wal-Mart sells an extraordinarily wide variety of merchandise and provides internal space for at least three independent businesses: a restaurant, a stereo store and a tax preparation service. Kiddie rides, vending machines and a community bulletin board are located on the sidewalk along the front of the store near the entrance. According to

appellants, this area "has become known as the best place in Ukiah to gather signatures to place matters on the state or local ballot."

On February 17, 2000, one Richard Johnson was arrested while on Wal-Mart property collecting signatures to qualify a voter initiative, known as Measure G, to decriminalize the personal use of marijuana. Local print and broadcast media reports stated or suggested that Wal-Mart caused Johnson to be arrested because it opposed his efforts to qualify Measure G for the ballot.

Four days later, stimulated by these news reports, appellants and approximately 25 others appeared at the Wal-Mart store to protest Johnson's arrest, which they saw as a misuse of "the power of arrest to suppress grass roots democracy." Appellants asked customers and others to sign petitions supporting Measure G and encouraged them to register to vote. Some appellants carried signs bearing messages such as "Free speech," "Wal-Mart or freedom," and "Time to vote."

Appellants' expressive activities, which we discuss below in greater detail, lasted for about an hour. The police appeared on the scene, observed appellants' activities and discussed the situation with Wal-Mart store manager Donald Estes, but made no arrests. In the presence of the police, Estes asked appellants to leave and when they refused made citizen's arrests of each of them. The police then took appellants into custody and transported them to the Ukiah Police Department where they were booked and released. Criminal charges were never filed.

On February 16, 2001, appellants filed a complaint in the Mendocino County Superior Court against respondents Wal-Mart and Estes, claiming false arrest and violation of constitutional rights, alleged as an intentional tort.[1] Respondents answered the complaint on March 14, 2001. On August 29, 2002, respondents moved for summary judgment or in the alternative summary adjudication.

On November 15, 2002, the court granted the motion for summary judgment in its entirety and dismissed the complaint with prejudice. The court ruled that Wal-Mart had adopted reasonable rules regulating the exercise of those rights in an effort to ensure that persons wishing to exercise free speech rights did not interfere with normal business operations, and that

---

[1] The complaint included a third cause of action for unfair business practices in violation of Business and Professions Code section 17000 et seq. Inexplicably, however, the trial court's ruling addresses only the other two causes of action and is entirely silent on the unfair business practices claim. Because the orders granting summary judgment and dismissing the complaint pertain to all causes of action, our reversal of the judgment restores all claims set forth in the complaint.

appellants had presented no evidence that those rules were too broad or unreasonably restricted the ability of persons exercising the right of free speech to reach their intended audiences. Nor, the court found, did appellants show that Wal-Mart could have adequately protected its business operations through less restrictive regulations. The court concluded that Wal-Mart's "time, place and manner" restrictions "present a reasonable balance between the rights of free speech and the rights of private property ownership," and that there was no triable issue of material fact as to whether those restrictions constituted reasonable regulations to assure that free speech activities did not interfere with Wal-Mart's normal business operations. The court determined, finally, that appellants' failure to comply with those regulations "constitutes a complete defense to plaintiffs' claim that Wal-Mart and Donald Estes violated plaintiffs' constitutional rights of free speech on February 21, 2000. That same failure also constitutes a complete defense to the claim for false arrest for trespass." The order granting summary judgment and dismissing the complaint with prejudice was entered on November 15, 2002. This timely appeal followed.

## DISCUSSION

### I.

"Appellate review of a summary judgment is limited to the facts shown in the supporting and opposing affidavits and those admitted and uncontested in the pleadings. In deference to the strong public policy favoring a trial on the merits, appellate courts are bound by the same principles governing the trial court's determination: i.e., the *moving party's* (respondent's) papers are *strictly construed* and the *opposing party's* (appellant's) papers are *liberally construed*. All doubts as to the propriety of granting the motion (whether there is any issue of material fact [Code of Civil Procedure] § 437c) are to be resolved *in favor of the party opposing the motion* (i.e., a denial of summary judgment)." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2003) ¶ 8:164, pp. 8-98.7 to 8-98.8, citing *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 [107 Cal.Rptr.2d 617, 23 P.3d 1143]; *Stratton v. First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071 [258 Cal.Rptr. 721]; *Heredia v. Farmers Ins. Exchange* (1991) 228 Cal.App.3d 1345, 1353–1354 [279 Cal.Rptr. 511].)

■ Summary judgments are reviewed de novo. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476 [110 Cal.Rptr.2d 370, 28 P.3d 116]; *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 67–68 [99 Cal.Rptr.2d 316, 5 P.3d 874].) "Because trial judges *no longer exercise discretion* in considering a summary judgment motion, application of the abuse of discretion standard is inappropriate. Under current law, summary judgment motions raise *only*

*questions of law* regarding the construction and effect of the moving and opposing papers; and questions of law are subject to the *independent* standard of review." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs, *supra*, ¶ 8:166, p. 8-98.9, citing *Saldana v. Globe-Weis Systems Co.* (1991) 233 Cal.App.3d 1505, 1511–1515 [285 Cal.Rptr. 385]; *Donchin v. Guerrero* (1995) 34 Cal.App.4th 1832, 1837 [41 Cal.Rptr.2d 192].)

We apply the same three-step analysis required of the trial court. " ' "First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond . . . . [¶] Secondly, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in movant's favor. . . . [¶] When a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue." ' [Citations.]" (*Chevron U.S.A., Inc. v. Superior Court* (1992) 4 Cal.App.4th 544, 548 [5 Cal.Rptr.2d 674].)

II.

The issues framed by the pleadings are straightforward. Appellants' cause of action for false arrest is predicated on the allegations that they and others "gathered peacefully to picket defendant WAL-MART's store in Ukiah," that "[t]he picketing did not obstruct vehicular traffic nor prevent customers from entering or exiting the premises," that respondents threatened to place them under citizen's arrest if they refused to leave Wal-Mart's premises, that compliance with the demand to leave would have required them "to surrender their state constitutional rights to picket," which they were unwilling to do, and that placing appellants under citizen's arrest, which resulted in their being taken into custody by the Ukiah City Police, "constituted false arrests" proximately causing injury.

False arrest is not a different tort but merely one way of committing the tort of false imprisonment. (*Asgari v. City of Los Angeles* (1997) 15 Cal.4th 744, 752, fn. 3 [63 Cal.Rptr.2d 842, 937 P.2d 273]); *Arpin v. Santa Clara Valley Transp. Agency* (9th Cir. 2001) 261 F.3d 912, 919.) The tort of false imprisonment "is premised upon a violation of the personal liberty of another accomplished without lawful authority . . . ." (*Asgari,* at p. 753.) A peace officer who accepts custody of a person following a citizen's arrest is not required to correctly determine whether the arrest was justified (see *Kinney v. County of Contra Costa* (1970) 8 Cal.App.3d 761, 768 [87 Cal.Rptr. 638] (*Kinney*)),[2] and cannot be held liable for the arrest if it was improper. (Pen.

---

[2] At the time *Kinney, supra,* 8 Cal.App.3d 761, was decided, Penal Code section 142 imposed criminal liability on peace officers who willfully refused to receive, inter alia, persons placed under citizen's arrest. The statute was amended in 1983 so as to make it inapplicable to

Code, § 847). Therefore, while a person falsely arrested by a citizen ordinarily has no remedy against the peace officer who took him or her into custody as a result of the arrest, he or she has a tort remedy against the offending citizen. (*Kinney,* at p. 769.)

Appellants maintain that Estes's arrests of them were false not only because they did not commit the criminal trespass for which he arrested them (Pen. Code, § 602.1, subd. (a)), but also, and independently, because respondents do not allege in their answer to the complaint that the trespass was committed or attempted in Estes's presence, as required by the statute authorizing arrest by a private person (Pen. Code, § 837, subd. 1), and confirmed by the case law (see, e.g., *People v. Sjosten* (1968) 262 Cal.App.2d 539, 543–544 [68 Cal.Rptr. 832]), and the evidence respondents submitted in support of their motion for summary judgment establishes that the offense (if there was one) was *not* committed or attempted in Estes's presence. Therefore, appellants maintain, Estes lacked legal authority to personally place them under arrest.

The cause of action for violation of constitutional rights, which incorporates the allegations of the cause of action for false arrest, alleges that appellants' activities were protected by article I, sections 2 and 3 of the California Constitution, and appellate opinions interpreting those provisions, "which hold that public fora exist on the private property of large retail establishments which have supplanted the traditional town squares and/or downtown shopping areas which were the traditional sites for free speech activities," and that respondents' arrests of appellants violated rights guaranteed by the aforesaid constitutional provisions. As to this cause of action, respondents maintained that Wal-Mart's premises are not a public forum and that appellants therefore have no constitutional right to protest on their property, and that appellants could not succeed even if the premises are a public forum due to their failure to comply with Wal-Mart's reasonable "time, place and manner" restrictions.

Both causes of action focus upon the impropriety of the arrests and the reason they were made, which was allegedly to suppress appellants' right of free speech. The complaint does not claim that Wal-Mart's "time, place and manner" restrictions are unreasonable or even refer to them.

### III.

The evidence submitted by respondents in support of the motion for summary judgment consisted exclusively of limited portions of the deposition

arrests made by private persons. The amendment of the statute does not, however, suggest that an officer who receives a person arrested by a private person must first determine the propriety of the arrest. (Stats. 1983, ch. 1092, § 239, p. 4024.)

testimony of each of the eight appellants,[3] appellant Hamburg's responses to form interrogatories, and the declaration of respondent Estes. Estes's declaration was accompanied by a copy of the incident report of the Ukiah Police, copies of three complaints Wal-Mart received from customers regarding appellants' activities, and a copy of Wal-Mart's "Rules and Regulations for Petitioning and Soliciting from Wal-Mart California Property." The evidence appellants submitted in opposition to the motion consisted primarily of the declaration of appellant David Drell, one of the coordinators of the protest. Neither party objected to the admissibility of any of the evidence submitted by the other and we find all the evidence admissible.

The proffered portions of appellants' depositions describe appellants' past political activities, the general nature of their expressive activities at Wal-Mart on the day in question, and the substance of the information they communicated and the number of people they spoke with. Appellants acknowledged that their activities did not take place in the area designated by Wal-Mart for expressive activities and that they had not procured insurance coverage for the activity. All appellants except David Drell, who was a coordinator of the protest, admitted they made no effort to identify themselves in advance to Wal-Mart management. Drell stated that after arriving at the scene he entered the store to find the manager in order to identify himself, describe the nature of the planned expressive activity and provide a copy of the petition and voter registration form protestors would be using. The Wal-Mart "greeter" Drell approached refused to direct him to the manager and "said something disparaging about the content of the petition," so Drell left the store and the protest commenced.

Appellants' confined most of their activities to a landscaped median approximately 25 feet from the front entrance to the store and the sidewalk along the front of the store. They did not use the four-by-six-foot area designated by Wal-Mart for expressive activities because that space was being used by two individuals soliciting donations to a children's program.

Estes's short declaration states that the Ukiah Wal-Mart store does not have "theatres, plazas, walkways or courtyards, where patrons are invited or encouraged to congregate and spend time together"; that the store "is in the business of selling merchandise, not to create a public square or similar place for people to gather"; that at the time of the incident Wal-Mart "had a petitioning policy, which individuals must adhere to in order to be granted access to the Ukiah Wal-Mart store property for purposes of speech activity"; that at that time "Wal-Mart designated an area 4 x 6 feet in size for particular expressive speech activity," though the store "could adjust this area upon

---

[3] For example, the transcript of appellant Hamburg's deposition is 63 pages long, but respondents only submitted 12 mostly nonconsecutive pages in support of their motion.

review of the particular activity engaged in, and the number of participants"; that at the time of the incident, "it was not good business practice for [the store] to encourage customers to congregate at the front of the store because there is merchandise at this location and sales cannot be made"; that the Ukiah Wal-Mart store "had previous problems with persons who enter property for the purpose of protesting and petitioning for various political causes"; and that, at the time of the incident in question, the store "had received numerous complaints from customers and employees concerning aggressive and harassing conduct by [appellants] and others in their group." Estes states that he "had conversations both with Ukiah police officers, [appellants] and other participants, in order to resolve the situation prior to any arrests." Finally, he states that "[a]fter my discussions with Ukiah police officers, I believed in good faith that [appellants] plaintiffs were in violation of the law." Accordingly, he asked appellants to leave and, when they refused, placed them under citizen's arrest.

Wal-Mart's rules and regulations impose six requirements. First, petitioning and soliciting is only permitted "in designated areas specified by Wal-Mart." "Wal-Mart reserves the right to change the designated area in good faith as Wal-Mart deems necessary for the commercial operation of its store." It is undisputed that the designated area at the Ukiah store is a four-by-six foot rectangle located 17 feet south of the main entrance.

Second, "Wal-Mart limits an Applicant to three consecutive days for petitioning and soliciting and requires advance notice of five business days of such activity." Petitioning and soliciting is not allowed during "peak traffic days," such as "the period from the weekend before Thanksgiving to and including January 2 of the following year."

Third, "[n]o sign, poster, placard, display, handbill or written material shall interfere with the commercial purpose of the Wal-Mart store or contain [or] depict 'fighting words,' obscenities, pornography, grossly or gruesome displays, highly inflammatory slogans likely to provoke disturbance or racial, or ethnic slurs." Written materials "must be submitted to Wal-Mart management prior to its use and if this prior submission is not done, then such material will not be allowed to be used at the store."

Fourth, the "Applicant must disclose in advance the identities of the participants in the planned expressive activity," acknowledge that they have read Wal-Mart's rules and regulations and agree to abide by them, and disclose whether any of those who plan to conduct expressive activity ever injured persons or property while engaged in similar expressive activity elsewhere during the last 12 months.

Fifth, "[i]f the nature or timing of the activity creates a foreseeable risk of injury [or] damage to persons or property, and that risk, in the discretion of management, warrants special insurance protection, Applicant must purchase and carry the necessary insurance coverage as determined by Wal-Mart management." However, failure to carry the necessary coverage will not be cause for denying the applicant "unless foreseeable risk warrants the need for special insurance," though "the Applicant must provide information about any existing general liability insurance policy covering the Applicant while engaged in the planned expressive activity."

Lastly, the Wal-Mart rules prohibit an applicant from "us[ing] any effort to impede, obstruct or interfere with any customer of the store. Further, no Applicant shall urge or encourage in any manner, customers not to purchase the goods or services offered by the store."

The police incident report states that two Ukiah police officers were dispatched to the scene. When they arrived, the officers "saw about 15 subjects, some of whom were collecting signatures for a petition to legalize marijuana and others who were holding signs to protest Walmart's suppression of their right to free speech." The officers entered the store, met with Estes and gave him copies of Penal Code sections 602 and 602.1. An officer explained that section 602 was not applicable because the store was open to the general public (see Pen. Code, § 602, subd. (n)), and also explained "the criteria for a violation of [section] 602.1, [subdivision] (a)," which applies to business establishments open to the public. Estes replied "that the petitioners were obstructing and intimidating customers by blocking their paths and using aggressive behavior to obtain signatures," which would violate section 602.1.[4]

In support of this claim, Estes provided the officers three written customer complaints. One of the officers passed this information on by phone to the chief of police. The officers then returned outside, identified appellant Bruce Hering as one of the leaders of the protest, and were told by Hering that the protestors refused to comply with Wal-Mart's rules. At that point the chief of police arrived on the scene. After he tried but failed to reach a "mutually agreeable resolution," Estes "checked with his legal department" and was "advised to arrest the petitioners if they refused to leave the premises." The

---

[4] Subdivision (a) of Penal Code section 602.1 states as follows: "Any person who intentionally interferes with any lawful business or occupation carried on by the owner or agent of a business establishment open to the public, by obstructing or intimidating those attempting to carry on business, or their customers, and who refuses to leave the premises of the business establishment after being requested to leave by the owner or the owner's agent, or by a peace officer acting at the request of the owner or owner's agent, is guilty of a misdemeanor, punishable by imprisonment in a county jail for up to 90 days, or by a fine of up to four hundred dollars ($400), or by both that imprisonment and fine."

police told Estes "he would need to tell each of the petitioners to leave the property and if they refused, to make a private person's arrest on each, before the police would accept custody of them." Estes then asked the protestors to leave and all but appellants did so. Estes then "verbally plac[ed] each [appellant] under private person's arrest." The police accepted custody of appellants and transported them to the Ukiah Police Department, where they were booked, cited for trespass and released. No criminal charges were ever filed by the district attorney.

The three customer complaints are very brief. The first states that after seeing the protestors, "I almost did not go in. As I was walking up to the Walmart door, I was confronted by a protestor asking me to sign to legalize pot. They were very persistent. It desterbed [sic] me. I did not appreciate it at all." The second complaining customer simply states, "I was approached, by some people outside Walmart with petitions, and was not happy [with] the way they approach people." The third customer said she was "appalled that these people are demonstrating in front of the store. The legalization of marijuana has nothing to do with our right to shop. The man who was arrested here last week was equally inappropriate—I feel their being positioned in front of the store is a violation of my civil rights." This complainant closed with the observation that "I have always found the store to be very family friendly and I like doing business here."

## IV.

Before determining whether the evidence contained in the moving papers entitles respondents to judgment as a matter of law, we think it appropriate to describe the manner in which the trial court addressed this central question.

The trial court stated that resolution of respondents' motion requires the following two-step analysis: "If the court determines that the Wal-Mart owners have 'fully opened the property to the public,' it must then determine whether the Wal-Mart 'time, place and manner' regulations are reasonable under the circumstances. The court will first review the reasonableness of the regulations. If the court determines that the 'time, place and manner' regulations are reasonable, there is no need to determine whether the Wal-Mart owners 'fully opened the property to the public.' "[5] In other words, in the mind of the trial judge, the crucial legal issue was the reasonableness on their face of Wal-Mart's "time, place and manner" restrictions.

---

[5] Though the court initially asserted that it need not determine whether Wal-Mart opened its property to the public, the ruling later states that "[w]hether obligated to or not, Wal-Mart has made its private property available to members of the public for the expression of their constitutional rights of free speech, including petitioning and protesting."

The court found Wal-Mart's "time, place and manner" rules to be reasonable not on the basis of any evidence marshaled by respondents in support of their motion (nor did respondents offer any evidence as to that issue, other than the rules themselves), but solely on the grounds that (1) Wal-Mart's rules were the same as or similar to those found reasonable in *Needletrades, supra,* 56 Cal.App.4th 996, and (2) appellants' failure to offer evidence or persuasive argument that Wal-Mart's rules were unreasonable.

The reasonableness of Wal-Mart's "time, place and manner" restrictions and respondents' refusal to be bound by them do not, however, establish that appellants committed the crime for which they were placed under citizen's arrest, which is defined in section 602.1, subdivision (a) of the Penal Code. As noted (*ante,* at p. 507, fn. 4), that statute makes it a misdemeanor to intentionally interfere with a lawful business establishment open to the public, "by obstructing or intimidating those attempting to carry on business" at the establishment and refusing to leave the premises after being requested to do so.

A person who refuses to consider her- or himself bound by "time, place and manner" restrictions, or who violates one or more particular restriction, does not necessarily commit the criminal offense defined by Penal Code section 602.1, subdivision (a). As we have seen, Wal-Mart's "time, place and manner" rules include one restriction (prohibiting efforts to "impede, obstruct or interfere with any customer of the store") that is conterminous with the prohibition of that statute, as well as other restrictions, such as the requirement of insurance coverage, that are not. A protestor who refuses to comply with reasonable "time, place and manner" restrictions can, in appropriate circumstances, be enjoined by the landowner from carrying out expressive activities, or even ejected from the premises (see *In re Cox* (1970) 3 Cal.3d 205, 217 [90 Cal.Rptr. 24, 474 P.2d 992]); but the refusal to comply does not constitute misdemeanor trespass *unless* it consists of intentional interference with the landowner's business through the obstruction or intimidation of its customers.

Thus, respondents' motion for summary judgment requires them to factually establish that appellants committed the conduct proscribed by the statute because that might negate appellants' claims of false arrest and violation of constitutional rights. Moreover, since the arrests that are central to both claims were made by Estes, a private person, respondents must also show that the offense was "committed or attempted in his presence." (Pen. Code, § 837, subd. 1.)

*Needletrades, supra,* 56 Cal.App.4th 996, which the trial court relied upon for the proposition that the facial reasonableness of the time, place and

manner restrictions was dispositive, involved a situation very different from that presented here. In *Needletrades*, the plaintiff union did not carry out any expressive activities on the defendants' premises, but instead sought a preliminary injunction restraining the defendants from enforcing the challenged rules, which it claimed were " 'unconstitutional conditions on the right to engage in free speech.' " (*Id.* at p. 1001.) The central issue framed by the pleadings in *Needletrades*, therefore, was the reasonableness of the landowner's rules.[6] Here, however, the allegations of the pleadings to which the motion for summary judgment must respond is not the constitutionality of Wal-Mart's rules but the propriety and purpose of the arrests. The constitutionality of the rules does not govern the lawfulness of the arrests.

With respect to the alleged false arrest, the factual questions are whether appellants intentionally interfered with Wal-Mart's business "by obstructing or intimidating those attempting to carry on business" with Wal-Mart (Pen. Code, § 602.1, subd. (a).) and did so in the presence of the private person who arrested them. (Pen. Code, § 837, subd. 1.)

The only evidence respondents provided relating to these questions was the declaration of Estes, the store manager, and the three written customer complaints he gave the police, earlier described. Estes does not declare that he observed appellants, or any of them, obstructing or intimidating any Wal-Mart customer, but merely that, at the time of the incident, the store had received "numerous" complaints from customers and employees "concerning aggressive and harassing conduct by [appellants] and others in their group." The customers whose complaints have been made a part of the record indicated only that they were offended by appellants' conduct. One complainant stated that she was "not happy [with] the way [the protestors] approach people," but no customer indicated that he or she had been obstructed from carrying on business with Wal-Mart or intimidated, or even that appellants *attempted* to prevent them from shopping at Wal-Mart.

---

[6] Moreover, unlike respondents here, who provided no factual evidence in support of the reasonableness of their rules, the defendants in *Needletrades, supra,* 56 Cal.App.4th 996, did provide such evidence. *Needletrades* involved six shopping malls. With respect to the only mall at which the plaintiff had applied for and actually been denied a permit, the store with which the plaintiff had a labor dispute was located on the seventh floor, where it wished to conduct its protest, but the areas designated by the rules for expressive activities were on the sixth and eighth floors. The defendants offered evidence that the fire department prohibited the designation of an area directly in front of the store of interest to the plaintiff union, and that the different locations the union objected to "were selected to comply with fire regulations." (*Id.* at p. 1003.) Similarly, the insurance requirement of the rules at issue in *Needletrades* was deemed reasonable, in part, on the basis of a declaration of the assistant general manager of the mall at which the plaintiff sought and was denied a permit that not only explained the justification of the discretionary insurance requirement but stated that the declarant had "*never requested special insurance from any petitioner*" (*id.* at p. 1006), and he would not request it from the plaintiff union. (*Ibid.*)

In *In re Wallace* (1970) 3 Cal.3d 289 [90 Cal.Rptr. 176, 475 P.2d 208], petitioners for habeas corpus had been arrested for allegedly obstructing a county fair by handing out leaflets protesting the effects on farm workers of automation of agriculture. After trial, the petitioners were found guilty of trespass in violation of Penal Code section 602, subdivision (j), making punishable the entry of lands with the intent of interfering with, obstructing, or injuring any lawful business of the landowner. The Supreme Court granted writ relief for the failure of the evidence to establish that the petitioners' leafleting activity constituted "obstruction" within the meaning of the statute. The evidence in *Wallace* showed that the petitioners stood in a pathway " 'stopping patrons and soliciting them,' " but that patrons who wished to inspect the exhibit at which petitioners were conducting their activity could do so " 'by avoiding the area where [petitioners] were standing.' " (*Id.* at p. 294.) The court found the evidence insufficient, pointing out that "any visitor to a fair or other public exhibition necessarily occupies a certain area of ground or floor space wherever he stands, and persons wishing to proceed past him are manifestly required to 'avoid' that area under pain of tort liability. . . . [P]etitioners were not in fact arrested because of any physical 'obstruction' they may have caused, but simply because they insisted on their lawful right to distribute leaflets and to display signs." (*Id.* at p. 295.) This appears also to have been the case here.

Moreover, respondents' meager evidence of obstruction is contradicted by appellants' evidence that they did not in any way interfere with Wal-Mart's business by obstructing or intimidating prospective customers. David Drell, one of the coordinators of appellants' protest, stated in a declaration that he and other protestors all conducted themselves "peacefully," and that none "interfered with customer access to Wal-Mart's premises." The police observed the protest immediately upon their arrival at the scene and again after meeting inside the store with Estes. So far as the record shows, the police were present during the only time at which Estes personally observed the protest. The police incident report states that when officers first arrived at the scene they "saw about 15 subjects, some of whom were collecting signatures for a petition to legalize marijuana and others who were holding signs to protest Walmart's suppression of their right to free speech." But nowhere in the police report is there any suggestion that the officers on the scene believed appellants or other protestors were intentionally interfering with Wal-Mart's business by obstructing or intimidating its customers or otherwise engaging in any criminal act, which apparently was the reason the police declined to make any arrests. The fact that the police took appellants into custody does not indicate they believed appellants actually committed criminal trespass because, as earlier noted, peace officers who take custody of a person arrested by a private person are not required to correctly adjudge

whether the citizen who made the arrest was justified in doing so. (See *Kinney, supra*, 8 Cal.App.3d at p. 768.)

Drell's declaration, and the inferences that may be drawn from the incident report and the refusal of the police to themselves arrest appellants, conflict with the scant evidence of obstruction and intimidation that respondents have provided. In short, the facts relative to the material issue of whether appellants committed the criminal act for which they were arrested are disputed.

■ Furthermore, it is not even necessary to determine whether appellants committed the trespass for which they were arrested if the offenses (assuming they took place) were not "committed or attempted" in the presence of the private person who arrested them. "The authority of a private citizen to make an arrest is more limited than that of a peace officer. A peace officer may arrest a person without a warrant whenever he has probable cause to believe that the person has committed a misdemeanor in his presence. [Citation.] A private citizen, however, may arrest another for a misdemeanor *only when the offense has actually been committed or attempted in his presence*. (Pen. Code, § 837, subd. 1.)"[7] (*Cervantez v. J.C. Penney Co.* (1979) 24 Cal.3d 579, 587 [156 Cal.Rptr. 198, 595 P.2d 975], italics added.) The mere fact that the private person has reasonable cause to believe a misdemeanor offense has been committed or attempted in his presence is not enough. (*People v. Martin* (1964) 225 Cal.App.2d 91, 94 [36 Cal.Rptr. 924]; *Collins v. Owens* (1947) 77 Cal.App.2d 713, 718 [176 P.2d 372].) As this division has stated, "presence" is not mere physical proximity but is determined by whether the offense is "apparent to the senses" of the person who makes the arrest. (*People v. Sjosten, supra*, 262 Cal.App.2d at pp. 543–544.)

■ Estes's declaration does not assert or even imply that the acts for which he arrested appellants were committed in his presence. Estes's claim that he acted in the "good faith [belief] that plaintiffs were in violation of the law" is based on his discussions with Ukiah police officers and, inferentially, customer complaints. In effect, Estes claims no more than that he acted with probable cause. However, as we have seen, a citizen's arrest for the commission of a misdemeanor cannot be made on that basis. Furthermore, the refusal of the police to themselves arrest appellants renders it unreasonable to assume they told Estes that he could properly do so. Finally, a declarant's self-serving

---

[7] The reason private persons are held to a higher standard than peace officers is that a citizen " 'has no public responsibility; there is less necessity for such arrests, and more occasion to deter private citizens from taking the law into their own hands.' " (*Roth v. Golden Nugget Casino/Hotel, Inc.* (D.N.J. 1983) 576 F.Supp. 262, 267, quoting Prosser, Law of Torts (1971) § 17, p. 100.) The need for a citizen to take the law into his own hands is most questionable where, as here, law enforcement officers (including the chief of police) are well represented on the scene.

statement that he acted in good faith carries little weight. (See, e.g., *Widener v. Pacific Gas & Electric Co.* (1977) 75 Cal.App.3d 415, 435 [142 Cal.Rptr. 304].)

Insofar as it relates to appellants' cause of action for violations of constitutional rights, respondents' motion for summary judgment was based on two theories: first, that Wal-Mart's property was not a public forum and that appellants therefore had no constitutional right to protest to begin with; and, second, that even if Wal-Mart's property was a public forum, appellants' claim failed as a matter of law because Wal-Mart has reasonable "time, place and manner" restrictions, and appellants' refusal to comply with those restrictions provides respondents a complete defense.

As to the first theory, the trial court ruled that "[w]hether obligated to or not, Wal-Mart has made its private property available to members of the public for the expression of their constitutional rights of free speech, including petitioning and protesting." Respondents have not appealed that ruling and, as it is supported by the evidence and the law, we shall not disturb it. (See *Robins v. Pruneyard Shopping Center, supra,* 23 Cal.3d 899; *In re Lane* (1969) 71 Cal.2d 872 [79 Cal.Rptr. 729, 457 P.2d 561].) The second theory, which *was* adopted by the trial court, is also unavailing, as we have already explained. Respondents did not merely attempt to enjoin appellants from petitioning and protesting on their property because of their unwillingness to comply with the "time, place and manner" restrictions, but subjected them to arrest for the commission of a crime. It is true that the ground upon which the arrests were apparently made—appellants' intentional interference with Wal-Mart's business by obstructing and intimidating its customers—is proscribed both by one of Wal-Mart's "time, place and manner" restrictions and by the Penal Code, but there is clearly a factual dispute as to whether appellants actually engaged in the proscribed conduct.

Appellants have alleged their cause of action for violation of constitutional rights as an intentional tort, which places at issue the purpose for which Estes placed appellants under citizen's arrest. Ultimately, appellants will have the burden of establishing that respondents arrested them falsely and for the purpose of suppressing the exercise of their constitutional rights of free speech. However, in connection with the motion for summary judgment it is now *respondents'* burden to establish, *on the basis of undisputed evidence,* that the arrests were made for the lawful purpose of enforcing Penal Code section 602.1, subdivision (a), and not for the purpose of suppressing protected speech.[8] Respondents have not sustained that burden. Appellants'

---

[8] We do not mean to suggest that in these circumstances appellants may posit a tort cause of action for *damages* upon a violation of California Constitution, article I, sections 2 and 3 (see *Degrassi v. Cook* (2002) 29 Cal.4th 333 [127 Cal.Rptr.2d 508, 58 P.3d 360]; *Katzberg v.*

failure to comply with Wal-Mart's "time, place and manner" restrictions provides respondents a complete defense to this action only if the failure to comply consists of the obstructive conduct prohibited by section 602.1, subdivision (a), which is vigorously disputed.

## V.

For the foregoing reasons, the judgment of the superior court is reversed. Appellants are awarded their costs on appeal.

Haerle, J., and Lambden, J., concurred.

On March 3, 2004, the opinion was modified to read as printed above.

*Regents of University of California* (2002) 29 Cal.4th 300 [127 Cal.Rptr.2d 482, 58 P.3d 339]), a question the parties have not raised and which we have not addressed.