Filed 10/16/24  Gonzalez v. Nations Ins. Co. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| ARTURO MENDEZ GONZALEZ,<br><br>       Plaintiff and Appellant,<br><br>       v.<br><br>NATIONS INSURANCE COMPANY,<br><br>       Defendant and Respondent. | B333832<br><br>(Los Angeles County Super. Ct. No. 21STCV22757) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Colin P. Leis, Judge.  Affirmed.

Law Offices of Gabor Szabo and Gabor Szabo for Plaintiff and Appellant.

Weinreb Law Group and Marnin Weinreb for Defendant and Respondent.

Arturo Mendez Gonzalez (appellant) appeals from a judgment entered after the trial court granted summary judgment in favor of Nations Insurance Company (Nations) on appellant's claims against Nations for breach of insurance contract and breach of the covenant of good faith and fair dealing. We affirm.

## FACTUAL BACKGROUND

### The policy

Nations issued a personal automobile insurance policy to Daniel Elizondo effective February 16, 2017, through February 16, 2018 (the policy). The policy provided coverage of $15,000 per person, $30,000 per accident.

### The accident

On May 28, 2017, appellant was involved in a traffic collision with Elizondo, in which appellant claimed to have sustained personal injuries. At the time of the incident, appellant had a passenger in his vehicle, Guillerma Lopez Barrera. A third vehicle, a tractor-trailer driven by Emerik Urban, was also involved. The traffic collision report identified the three vehicles involved in the incident as those driven by Elizondo, appellant, and Urban.

### Policy limit demands and investigation

Five weeks after the collision, on or about July 3, 2017, Nations' third party claims adjuster, AFA Claims Services (AFA), received demand letters dated June 26, 2017, from appellant's counsel for the injuries sustained by appellant and Barrera. The letters demanded the $15,000 per person policy limit for appellant and Barrera be paid within 20 days. If paid, the

2

$30,000 aggregate policy limits would be paid to settle their claims.

AFA responded to the demand letters on July 3, 2017, by advising appellant's counsel that Nations was unable to accept or reject the demands because it had determined there was a potential policy limit issue and was awaiting further information to identify all injured parties and claims. The response letter emphasized that until the extent of exposure for all liability was known, Nations was unable to tender any settlement offers to appellant and Barrera.

On the same day, AFA received a new letter of representation on behalf of Barrera, dated June 28, 2017, from the law offices of Brent Romney.

AFA received a second demand letter on behalf of both appellant and Barrera from appellant's attorney on July 20, 2017. In the second demand letter, appellant's counsel asserted the request for additional time was unreasonable on the grounds that the police report identified all parties involved and indicated appellant and Barrera were the injured parties. The second demand letter required the policy limits to be offered to appellant and Barrera within 10 days.

On July 26, 2017, AFA contacted Urban to inquire whether he had been injured in the accident. Urban responded that he was represented by an attorney, and he would call the following day with his attorney's information. On July 27, 2017, AFA received a call from a paralegal named Diana, at the Law Offices of Robert Bollar, who confirmed the office's representation of Urban, but she did not yet know whether Urban was injured or whether he would present a claim for damages related to the accident.

On July 28, 2017, AFA responded to appellant's counsel's second demand letters that it could neither accept nor reject the limits demands until it knew the extent of the full exposure to its insured. AFA further communicated it had determined a potential policy limits issue and was awaiting the third party's medical documentation in order to evaluate the medical claims of all parties.

On August 23, 2017, AFA called the Law Offices of Robert Bollar seeking information about whether Urban was making a personal injury claim. AFA was told the attorney handling the matter would return the call. The same day, AFA sent Urban's attorney a letter inquiring whether Urban had been injured in the accident. AFA also sent that day appellant's attorney a status letter, advising it required further time to complete the investigation due to pending information from the third party involved.

In October 2017, appellant filed a lawsuit against Elizondo for injuries he claimed to have sustained in the accident.

On November 2, 2017, AFA again called the Law Offices of Robert Bollar to inquire whether Urban had been injured in the accident and would be making a claim against Elizondo. AFA was unable to speak to Urban's attorney, so sent a letter the same day inquiring whether Urban had been injured and whether he would be making a claim. On the same day, AFA sent a letter to appellant's attorney advising that additional time for investigation was required.

On November 28, 2017, AFA again spoke with Diana from the Law Offices of Robert Bollar. For the first time, AFA was advised that Urban had not sustained personal injuries in the accident and his damages would likely be limited to the damage

to his truck. Diana said she would forward the invoice for damages to Urban's truck.

On December 6, 2017, AFA sent status letters to the attorneys for appellant, Barrera, and Urban, advising it could neither accept nor reject any demands due to a potential limits issue. 3/6 aug. p. 14)~ Also on December 6, 2017, AFA spoke to Barrera's new attorney and inquired whether there would be a new demand for Barrera, as prior demands had been sent by appellant's counsel. Counsel for Barrera advised they would be submitting their own demand on behalf of Barrera.

On December 14, 2017, Diana from Robert Bollar's office definitively confirmed to AFA that Urban had not been injured and would not be making a claim against Elizondo for personal injuries.

**Settlement**

On the same day AFA learned Urban would not make a personal injury claim against its insured, Nations offered the per-person policy limit of $15,000 to appellant. Appellant's attorney stated he would discuss the offer with his client but he believed the limits were open. AFA reminded appellant's attorney that AFA had acknowledged his demand, however due to multiple parties had to wait to receive all demands from all parties involved. Appellant's attorney repeated, "not my problem."

AFA also offered the per-person bodily injury limit of $15,000 to Barrera. Barrera, through counsel, accepted the offer.

Appellant's attorney continued to refuse to accept Nations' tender of the policy limit. In May 2021, Nations and appellant settled the October 2017 personal injury action brought by appellant against Elizondo through a settlement agreement. The parties agreed to settle the matter for: (1) payment of the policy's

per person bodily injury limits of $15,000; (2) an assignment of Elizondo's rights against Nations to appellant "as set forth in Paragraph B"; and (3) agreeing to a value of $140,000 of appellant's personal injury action for the purposes of subsequent litigation of the claims assigned to appellant "pursuant to Paragraph B."

Paragraph B specified the assignment was for "all claims and causes of action which [Elizondo] may now have or hereafter acquire against Nations based on the Open Policy Claim (the 'Assigned Claim')." The "Open Policy Claim" was defined as "Nations['] fail[ure] to timely accept the Policy Limits Demands, which gave rise to a breach of Nations' obligations to its insured to settle; and that such failure opened up the limits of the Nations Policy, subjecting Nations to liability in excess of the policy limits of the Nations Policy." The agreement specified that Nations denied appellant's contentions.

The "Open Policy Claim" was to be resolved in a "Bad Faith Action." The settlement agreement specified "[t]he only issue to be determined in the subsequent Bad Faith Action, pursuant to Paragraph G, is whether or not Nations' failures to accept Plaintiff's policy limit demands constituted bad faith, i.e. a breach of the covenant of good faith and fair dealing implied in all insurance contracts."

Paragraph G provided: "Following the execution of this Agreement and the payment by Nations of the Policy Limits Payment, [appellant] shall file the Bad Faith Action against Nations in which the sole issue to be adjudicated is [appellant's] entitlement to recovery of damages on the Assigned Claim (i.e., the Open Policy Claim). The Bad Faith Action shall be filed and tried in the Superior Court for Los Angeles County."

6

The settlement agreement was signed by appellant, Nations, and Elizondo.

## PROCEDURAL HISTORY

Appellant filed this action for breach of contract and breach of the covenant of good faith and fair dealing in June 2021. The complaint alleged Nations "failed and refused to settle with [appellant] within the limits of Elizondo's policy, despite that [*sic*] two demands served on Nations by [appellant] to settle for $15,000.00." Appellant alleged the refusals "were unreasonable and unjustified and constituted material breaches of the Policy." Appellant further alleged "Nations fraudulently made up lies to save money for Nations by falsely claiming that there were other Claimants against the policy" and that Nations conducted an "[u]nreasonable and improper investigation."

In his responses to interrogatories, appellant asserted the same theory, responding: "Had Nations and its agents done even a minimal cursory investigation, such as one or two phone calls, they would have learned that Mr. Urban was not injured and never claimed to have been injured in the subject accident. Therefore, the refusal of the policy limit payment was unreasonable and unjustified as it had no factual basis and no evidence that Mr. Urban was injured. Exposing Mr. Elizondo, Nations's insured, to an excess judgment was a breach of the implied covenant of good faith and fair dealing in Mr. Elizondo's insurance policy. [Appellant] wrote two separate policy limit demands to settle [appellant's] claim. None of which were timely accepted. There were never ever other claimants against Nations' policy other than [appellant] and his passenger."

7

Nations filed its motion for summary judgment in July 2022, explaining appellant settled his claims against Elizondo in the underlying action by having Elizondo assign to appellant "all claims and causes of action which he has against Nations based on [appellant's] 'Open Policy Claim' (i.e., [appellant's] claim that Nations failed to timely accept his Policy Limits Demands)." Nations argued appellant's lawsuit was based on the faulty premise that an insurer commits bad faith when requesting more time to respond to a limits demand when there are potentially additional claimants. Nations pointed out appellant's position was contrary to clear California law stating that when a loss involves multiple claimants, an insurer must protect its insured from multiple claims so the insured is not subject to personal liability on any of the claims. (Citing *Heredia v. Farmers Ins. Exchange* (1991) 228 Cal.App.3d 1345; *Kinder v. Western Pioneer Ins. Co.* (1965) 231 Cal.App.2d 894.) Nations argued a bad faith claim requires a finding that the insurer acted unreasonably in some respect, and that its conduct of declining to accept or deny appellant's policy limits request was not unreasonable as a matter of law under the circumstances. In fact, insurers may be held liable for bad faith for the over-eager settlement of some claims to the detriment of others. Nations argued appellant's policy limit demands were unreasonable because they imposed a short deadline, ignored the existence of a potential additional claimant, Urban, and demanded that Nations act contrary to California law by paying its policy limits and not protecting its insured from additional claims. Nations argued only one inference could be drawn from the undisputed facts—that Nations acted reasonably in response to the policy limit demands and there was no breach of contract or bad faith as a matter of

8

law.  Nations pointed out when an insurer acts reasonably and offers the limits in settlement, there is no bad faith as a matter of law.  (Quoting *Graciano v. Mercury General Corp.* (2014) 231 Cal.App.4th 414, 426, 434.)

Appellant opposed the motion, pointing out the reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact, but becomes a question of law when the evidence is undisputed and only one reasonable inference can be drawn from the evidence.  (Quoting *Pinto v. Farmers Ins. Exchange* (2021) 61 Cal.App.5th 676, 689.)  Appellant asserted he disputed the credibility of Nations' evidence and the truthfulness of the adjusters' testimony.  Appellant took the position Nations made misrepresentations regarding the potential third party claim.  Appellant accused Nations of creating fake file notes.  Appellant asserted it was undisputed Urban never made a bodily injury claim.

Nations filed supplemental evidence including the settlement agreement.  On the same date, Nations filed a reply brief,  arguing appellant had no evidence to suggest Nations acted unreasonably in responding to appellant's policy limit demand.  Nations argued appellant's new claims of improper claims handling were outside the permissible scope of the action pursuant to the settlement agreement.

On August 10, 2023, the trial court posted its tentative decision to deny the summary judgment motion, citing Nations' noncompliance with California Rules of Court, rule 3.1350 and a two-month delay between the date Nations learned of Urban's denial of injury and the date of Nations' acceptance of appellant's policy-limits demand.

9

On August 11, 2023, the parties argued the motion. The court took the matter under submission and issued a final written ruling on September 20, 2023. The court noted it considered the moving papers, opposition, and reply, but did not consider the surresponse and surreply filed by the parties. The court further noted the settlement agreement between the parties limited the issues to be decided in this litigation. Specifically, Paragraph D specified, "[t]he only issue to be determined . . . is whether or not Nations' failures to accept [appellant's] policy limit demands constitute bad faith, i.e. a breach of the covenant of good faith and fair dealing implied in all insurance contracts." Because of the settlement agreement, the court's analysis focused on Nations' failure to pay appellant's June and July 2017 policy-limit demand letters within the time limits of those letters. Because the settlement agreement limited appellant's claims, appellant's other allegations of breach or bad faith were not properly before the court. Accordingly, Nations' failure to address those other issues were not fatal to Nations' motion for summary judgment.

The court explained third party Urban's involvement in the collision imposed on Nations a duty to its insured to investigate the possibility that Urban might make a claim against the policy. Hence, Nations' refusal to accept or deny the June and July demand letters were reasonable as a matter of law.

The court noted the dispute between the parties as to the events of December 14, 2017, when, Nations asserts, it first learned that Urban would not be making a claim, and February 16, 2018, when appellant asserts Nations finally

10

tendered the policy limits to appellant was a "red herring."[1] Under the terms of the settlement agreement, the only potentially actionable breach happened in June and July 2017 when Nations refused to offer the policy limits.

On October 17, 2023, appellant filed a notice of intent to file a motion for new trial. Appellant argued the court's ruling was not based on the pleadings but was based on an improper interpretation of the settlement agreement between the parties. After full briefing and a hearing, appellant's motion for new trial was denied.

Appellant filed his notice of appeal from the judgment on November 27, 2023.

## DISCUSSION

### I.    Applicable law and standard of review

In reviewing summary judgment motions, we apply "the same three-step analysis required of the trial court." (*Hamburg v. Wal-Mart Stores, Inc.* (2004) 116 Cal.App.4th 497, 503 (*Hamburg*).) First, we identify the issues framed by the pleadings. Second, we determine whether the moving party has "'"established facts which negate the opponent's claim and justify a judgment in movant's favor."'"" (*Ibid.*) The "'"third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue."'"" (*Ibid.*)

We review the trial court's decision de novo, "'applying the rule that "[a] defendant is entitled to summary judgment if the

---

[1]    Nations' business records show that Nations made an offer to appellant of the $15,000 policy limit on December 14, 2017, the same day it definitively learned Urban would not be making a claim against the policy.

11

record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail.""" (*MacKinnon v. Truck Ins. Exchange* (2003) 31 Cal.4th 635, 641.) "On review of a summary judgment [motion], the appellant has the burden of showing error, even if he did not bear the burden in the trial court." (*Claudio v. Regents of the University of California* (2005) 134 Cal.App.4th 224, 230.) However, in reviewing the court's decision to grant summary judgment, "we liberally construe the evidence in support of the party opposing summary judgment and resolve all doubts about the evidence in that party's favor." (*Caliber Paving Co., Inc. v. Rexford Industrial Realty & Management, Inc.* (2020) 54 Cal.App.5th 175, 190.) "[W]e must draw from the evidence all reasonable inferences in the light most favorable to the party opposing summary judgment." (*Ibid.*) "We may affirm on any ground supported by the record, and we are not bound by the trial court's reasoning." (*Ryder v. Lightstorm Entertainment, Inc.* (2016) 246 Cal.App.4th 1064, 1072.)

## II. Issues framed by the pleadings

The first step in our analysis is to identify the issues framed by the pleadings. (*Hamburg, supra*, 116 Cal.App.4th at p. 503.) Here, appellant's pleadings were restricted by the settlement agreement between the parties in the underlying matter. The sole basis for appellant's right to bring this action against Nations was the settlement agreement. Appellant acknowledged this fact, alleging: "Elizondo assigned his rights under Nations['] . . . policy, including but not limited to Nations['] . . . failure to settle [appellant's] claim for injuries against Elizondo . . . within policy limit." Thus, appellant's complaint must be read in conjunction with the settlement agreement in order to appreciate the scope of the pleadings.

12

Pursuant to the settlement agreement, the sole issue in this action was whether Nations' alleged failure to accept appellant's policy limit demands constituted bad faith. As set forth in the settlement agreement, "[t]he only issue to be determined in the subsequent Bad Faith Action, pursuant to Paragraph G, is whether or not Nations' failures to accept [appellant's] policy limit demands constituted bad faith, i.e. a breach of the covenant of good faith and fair dealing implied in all insurance contracts." Paragraph G reiterates: "[f]ollowing the execution of this Agreement and the payment by Nations of the Policy Limits Payment, [appellant] shall file the Bad Faith Action against Nations in which the sole issue to be adjudicated is [appellant's] entitlement to recovery of damage on the Assigned Claim (i.e., the Open Policy Claim)." The "Open Policy Claim" is defined as appellant's claim "Nations failed to timely accept the Policy Limits Demands."

Appellant's complaint reflects the limited nature of the action. In his first cause of action for breach of contract, appellant alleged: "Nations has failed and refused to settle with [appellant] despite that [*sic*] two demands served on Nations by [appellant] to settle for $15,000.00. [¶] . . . The refusals were unreasonable and unjustified and constituted material breaches of the Policy." In his second cause of action for breach of the covenant of good faith and fair dealing, appellant alleged: "In the absence of reasonable basis for doing so, and with full and conscious disregard of the consequences of which Nations was appraised of, Nations have [*sic*] failed and repeatedly failed to accept the timely and within policy limit settlement demands of [appellant] and settle [appellant's] claim for the applicable $15,000, as required by the terms of Elizondo's policy." Appellant

13

alleged "it was unreasonable and unjust to refuse to settle under the liability coverage of Elizondo's policy." Appellant's allegations of a delayed and fraudulent investigation are similarly tied to Nations' refusal to settle in response to appellant's demands.

Appellant argues that the trial court "abused its discretion by ignoring the allegations of the pleadings" during the summary judgment proceedings.[2] (Boldface & underscoring omitted.) Appellant asserts it was not the complaint in the subject litigation, but the settlement agreement from a prior litigation, which framed the issues in this summary judgment proceeding. Instead of considering the issues raised by appellant, appellant argues, the court based its decision on its interpretation of the settlement agreement.

The trial court did not err by limiting the issues to be decided in this litigation to those expressly permitted by the settlement agreement. Appellant had no right to bring this action without the settlement agreement and was confined to the claims described therein. Further, although appellant asserts Nations did not dispute all issues raised in the complaint, appellant fails to identify any specific unresolved issues. Appellant has failed to show error in the trial court's decision to limit the issues to those specifically permitted by the settlement agreement.

---

[2] As set forth above, the proper standard of review is de novo. (*MacKinnon v. Truck Ins. Exchange, supra*, 31 Cal.4th at p. 641.) We do not review the trial court's reasoning, and may affirm on any ground. (*Ryder v. Lightstorm Entertainment, Inc., supra*, 246 Cal.App.4th at p. 1072.) We therefore decline to address appellant's arguments directed at the trial court's reasoning.

Based on our review of the complaint and the settlement agreement, we identify the sole issues in this matter to be whether Nations' failure to pay appellant's June or July 2017 policy-limit demand letters within the time limits of those letters constituted bad faith.

## III. No breach or bad faith as a matter of law

Whether an insurer acted reasonably in connection with a settlement offer "'becomes a question of law where the evidence is undisputed and only one reasonable inference can be drawn from the evidence.'" (*Pinto v. Farmers Ins. Exchange, supra*, 61 Cal.App.5th at p. 689.) A cause of action for bad faith requires a finding that the insurer acted unreasonably. (*Id.* at p. 692.) Specifically, to be liable for bad faith, "an insurer must not only cause the insured's damages, it must act or fail to act without proper cause, for example by placing its own interests above those of its insured." (*Ibid.*) Failure to accept a reasonable settlement is not per se unreasonable. (*Ibid.*)

California law establishes that an insurer, when faced with multiple claims, "must, with due regard for the interests of its insured, attend to his best protection against all of these." (*Kinder v. Western Pioneer Ins. Co., supra*, 231 Cal.App.2d at p. 902.) In other words, an insurance company "may be held in bad faith for the over-eager settlement of some claims, to the detriment of others." (*Id.* at p. 901.)

The undisputed facts establish that the underlying accident was a multivehicle accident with multiple potential claimants: appellant, Barrera, and Urban. When Nations began investigating the potential claim, it was informed Urban was represented by counsel. Nations reached out to inquire whether

15

Urban would be making a claim against Nations' insured, Elizondo.

Appellant's first policy-limits demand letter was dated June 26, 2017, and demanded Nations pay the $15,000 per-person policy limit to appellant and Barrera within 20 days, such that the $30,000 aggregate policy limits would be paid to settle their claims. Nations timely responded on July 3, 2017, advising appellant's counsel it could neither accept nor reject appellant's demand because it had determined there was a potential limits issue and Nations was pending receipt of the police report and medical documentation to evaluate the injury claims of all claimants.

Appellant's second policy-limits demand letter was dated July 20, 2017. The second demand letter required the policy limits to be offered to both appellant and Barrera within 10 days. On July 27, 2017, AFA spoke with Urban's attorney's office, and was informed it was as yet unknown whether Urban would be filing a claim for damages. One day later, on July 28, 2017, AFA responded to the second demand letter by informing appellant it could neither accept nor decline appellant's demand until it knew the full extent of exposure of its insured.

Considering that Urban was represented by counsel and might file a claim concerning the underlying accident, Nations acted reasonably in declining to accept or reject appellant's policy-limits demands in June and July 2017. Nations' insured, Elizondo, remained exposed to potential liability in the event Urban made a claim. Nations acted reasonably as a matter of law in protecting its insured from this potential third party claim.

16

## IV.    No triable, material factual issue

The """"third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue."""" (*Hamburg, supra*, 116 Cal.App.4th at p. 503.) As set forth below, we reject appellant's arguments as to the existence of a triable issue of material fact concerning Nations' responses to appellant's policy-limits demands.

Appellant first argues that the trial court "abused its discretion" when it accepted Nation's business records as undisputed evidence just because of their admissibility. (Boldface & underscoring omitted.)  Appellant argues he disputed the authenticity and credibility of Nations's claim file concerning this case.  Appellant argues issues of credibility and motivation are fact questions that cannot be determined on summary judgment.  (Citing *McCabe v. American Honda Motor Co.* (2002) 100 Cal.App.4th 1111, 1119.)

Code of Civil Procedure section 437c, subdivision (e), provides, with certain exceptions not relevant here, "summary judgment shall not be denied on grounds of credibility."  We therefore reject appellant's claim that the credibility disputes he raises create a triable issue of material fact.  Instead, we find the trial court correctly focused on admissibility.  Nations' claim file and its contents were admissible business records pursuant to Evidence Code section 1271. (*Klem v. Access Ins. Co.* (2017) 17 Cal.App.5th 595, 606.)  Both the litigation adjuster and supervisor testified to the reliability and accuracy of the claim notes and testified it is impossible to alter claim notes after they have been entered.  The records were properly admitted, and appellant's credibility challenges do not create a triable issue of fact.

Appellant next claims the trial court abused its discretion when it "disregarded" all evidence offered by appellant to show Nations' bad faith investigation and intentional misrepresentations. In support of this argument, appellant lists eight facts appellant insists create a dispute regarding the good faith of Nations' investigation. Appellant points out: (1) Nations' own insured reported Urban was not injured; (2) the police who arrived at the scene did not report Urban was injured; (3) Urban testified he never claimed he was injured and no one from Nations ever took his recorded statement; (4) the vehicle operated by Urban had only $183 worth of damage; (5) the two injured parties making claims told Nations Urban was not injured; (6) Robert Bollar testified he never represented Urban; (7) Nations did not accept the representations of its own insured, the injured claimants, or the police investigator, but accepted the representation of a paralegal at the office of Robert Bollar that Urban was not injured as true; and (8) Nations has never spoken directly to Urban to inquire about his injuries.

The facts listed by appellant do not create a triable issue of material fact as to the reasonableness of Nations' response to appellant's June and July 2017 policy-limit demands. Elizondo, appellant and Barrera could not competently testify as to whether Urban intended to make a claim against the policy. Elizondo testified he had no actual knowledge as to whether Urban would be making such a claim. Further, the declaration of Bollar does not undermine Nations' evidence that Nations' adjuster spoke to Bollar's office several times and sent them letters inquiring whether Urban had been injured in the accident and would be making a claim. While appellant acknowledges the evidence does not show Nations knew Urban was not going to

18

make a claim on July 30, 2017, he argues his evidence shows Nations *should have known* Urban was not going to make a claim. Preliminarily, we disagree with appellant's characterization of the evidence. Absent confirmation from Urban's attorney, Nations could not have ruled out a claim from Urban. Further, the question is not whether Nations should have known, but whether Nations acted reasonably in responding to the policy limit demands. It did so, as a matter of law, considering its obligation to protect its insured from the possibility of multiple claims. (*Kinder v. Western Pioneer Ins. Co., supra*, 231 Cal.App.2d at pp. 901–902.)

Appellant insists the trial court's finding that Nations' investigation of Urban's potential claim was still underway on July 30, 2017, was a fact finding for the jury to decide. However, appellant has failed to point to any evidence contradicting the evidence in Nations' claim file. It was undisputed that November 28, 2017, was the first time Bollar's office informed Nations Urban had not sustained injuries in the accident, and that Bollar's office did not confirm this information until December 14, 2017. At the time of appellant's two demand letters, the undisputed evidence showed Nations had not received confirmation that Urban did not intend to file a claim against Elizondo's policy. As such, Nations' response to appellant's policy-limit demands was reasonable as a matter of law. Further, appellant points to no evidence that in declining to accept or deny appellant's June and July 2017 policy-limits demands, Nations caused appellant any damages, acted or failed to act without proper cause, or placed its own interests above those of the insured. (*Pinto v. Farmers Ins. Exchange, supra*, 61 Cal.App.5th at p. 692.)

19

Appellant has failed to demonstrate a triable issue of material fact concerning the limited questions at issue in this lawsuit.

## DISPOSITION

The judgment is affirmed.  Respondent is awarded its costs of appeal.

_____
CHAVEZ, J.

We concur:


_____
ASHMANN-GERST, Acting P. J.


_____
HOFFSTADT, J.