[Civ. No. 26234. First Dist., Div. One. June 15, 1970.]

RODNEY P. KINNEY et al., Plaintiffs and Appellants, v.
COUNTY OF CONTRA COSTA et al., Defendants and Respondents.

**COUNSEL**

Charles J. Williams for Plaintiffs and Appellants.

Jerome B. Falk, Jr., and Paul N. Halvonik as Amici Curiae on behalf of Plaintiffs and Appellants.

Gordon, Welch, Waltz & DeFraga, John E. Waltz and Allan DeFraga for Defendants and Respondents.

## OPINION

**ELKINGTON, J.** — Nadine Kinney and her husband Rodney Kinney, plaintiffs below, commenced an action against Don Vallentyne, a private citizen, Roy Wallis, a sheriff's deputy, and the County of Contra Costa. As to Wallis and the county, relief was sought based on false arrest and false imprisonment. As to the county alone additional relief was sought for "failure to provide medical attention" and "failure to take before a magistrate without unnecessary delay."

At the close of plaintiffs' case the trial court granted motions of the county and Wallis for nonsuit on the issues of false arrest, false imprisonment, and "failure to provide medical attention." A similar motion by the county on the issue of "failure to take before a magistrate without unnecessary delay" was denied. Thereafter the jury returned its verdict in favor of the county on the latter issue. Another verdict, not relevant to this appeal, awarded plaintiffs damages against defendant Vallentyne. Judgment was thereafter entered against plaintiffs in favor of the county and Wallis, and in favor of plaintiffs and against Vallentyne. Plaintiffs appeal from that portion of the judgment in favor of the county and Wallis.

Plaintiffs' principal contention relates to the trial court's order of nonsuit on the false arrest and false imprisonment issues. We must therefore apply the rule recently reiterated in *Becker* v. *Johnston,* 67 Cal.2d 163, 165-166 [60 Cal.Rptr. 485, 430 P.2d 43], as: "The nonsuit was properly granted only if, disregarding conflicting evidence and giving cross-complainant's evidence all the value to which it is legally entitled and indulging in every legitimate inference which may be drawn in her favor, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in her favor. [Citation.]" Accordingly we state the relevant evidence in a light most favorable to plaintiffs, principally as testified by Mrs. Kinney.

Mrs. Kinney had brought a sewing machine for repairs to defendant Vallentyne, a sewing machine dealer and repairman. A succession of disputes arose between them which over a two-week period resulted in what plaintiffs described as "feelings of aggravation and mutual distrust." On March 23, 1965, Mrs. Kinney went to Vallentyne's store; her purpose was to "test it and if it was in working order, she would pay for it and take delivery." Entering the store she saw Vallentyne who told her he had two customers and "to go sit down and wait till he could get to me." Mrs. Kinney responded, "They'd better be careful if they do any business here," but she testified, "this was not directed at the customers or anybody; it just came out." She admitted saying, "If you buy anything from [*sic*] at this

store, he will cheat you" but she "did not specifically say them to anybody directly" nor did she expect "the people to hear." And she testified, "The way he embarrassed me and the way he demanded of me to go and sit down until he could get to me, I was thoroughly humiliated in front of everybody." Vallentyne told her she was disturbing the peace; she responded that she was not. He then said, " 'You're going to be sorry, lady, if you don't be quiet,' and with that the two customers left the store." According to Mrs. Kinney's deposition he then stated "approximately"—"that he was making a citizen's arrest, he was going to call the police," and that he was arresting her for disturbing the peace. At the trial she did not recall if he used "those exact words" but "He kept telling me I was going to be sorry, that he was going to have them arrest me, that he wanted a citizen's arrest." Vallentyne then called the police, after which he locked the store's door, saying, "You are not going to get out of here, lady."

A few minutes later Officer Wallis arrived. Vallentyne told him that Mrs. Kinney was "shouting and screaming and carrying on" and that he had lost customers on account of her. Wallis testified that Vallentyne told him he had placed Mrs. Kinney under citizen's arrest. Mrs. Kinney could not recall whether or not Vallentyne had said that, but Wallis did ask "him if this is what he wanted to do and Mr. Vallentyne said 'yes.' " Wallis talked to two of Vallentyne's employees who had remained in the store; they said they had heard the lady raise her voice, but otherwise didn't know what was being said or what was going on. Asked directly by the officer if she had been disturbing the peace, Mrs. Kinney responded "No." Since Vallentyne was insistent, he was required to make a "citizen's arrest on me in front of the officer." The officer then told Vallentyne that "he'd have to sign a formal complaint against me, and he'd have to be at a certain place at a certain time, and Mr. Vallentyne said he understood this." The officer said to the lady, "Well come on, let's go," and she said, "Where are we going?" and he said, "I'm taking you to the county jail," to which he thereupon delivered her. The officer was courteous, although "abrupt"; he was not "impolite" and he did not handcuff or abuse Mrs. Kinney.

■ From any view of the evidence it is clear that Vallentyne had made a citizen's arrest of Mrs. Kinney for disturbing the peace. A private person may make such an arrest. (See Pen. Code, §§ 834, 837; all statutory references hereafter, unless otherwise noted, will be to that code.) Section 847 provides in part:[1] "A private person who has arrested another for the com-

---

[1]The full text of Penal Code section 847 follows: "A private person who has arrested another for the commission of a public offense must, without unnecessary delay, take the person arrested before a magistrate, or deliver him to a peace officer. *There shall be* no civil liability on the part of and no cause of action shall arise against

mission of a public offense must, without unnecessary delay, . . . deliver him to a peace officer." Vallentyne, following the statute, delivered Mrs. Kinney to Officer Wallis. The officer, in accordance with his statutory duty (§ 849, see fn. 3 *post*) accepted such delivery and booked her in at the county jail.

 Section 142 states that every peace officer *who willfully refuses to receive any person charged with a criminal offense* is himself guilty of a felony.[2] The subject of a citizen's arrest is a "person charged with a criminal offense." (*Shakespeare* v. *City of Pasadena,* 230 Cal.App.2d 387, 389 [40 Cal.Rptr. 871]; also *People* v. *Garnett,* 129 Cal. 364, 366 [61 P. 1114]; *People* v. *Serrano,* 123 Cal.App. 339, 341-342 [11 P.2d 81].) Section 847 (see full text *ante,* fn. 1) provides: *"There shall be no civil liability on the part of and no cause of action shall arise against any peace officer, acting within the scope of his authority, for false arrest or false imprisonment arising out of any arrest when: . . . such arrest was made pursuant to the requirements of Penal Code Sections 142, . . ."* (Italics added.)

A discussion of the effect of Penal Code section 849, not considered by the parties to this appeal, seems pertinent to a disposition of the instant contention. Section 849, as amended 1957,[3] permits a peace officer, when a person has been arrested by a private citizen and delivered to him pursuant to section 847, to release the arrested person from custody if he, the peace officer, "is satisfied that there is no ground for making a criminal complaint against the person arrested." However, the question whether there was "no ground for making a criminal complaint" against Mrs. Kin-

---

any peace officer, acting within the scope of his authority, for false arrest or false imprisonment arising out of any arrest when:

"(a) Such arrest was lawful or when such peace officer, at the time of such arrest had reasonable cause to believe such arrest was lawful; or

"(b) When such arrest was made pursuant to a charge made, upon reasonable cause, of the commission of a felony by the person to be arrested; or

"(c) When such arrest was made pursuant to the requirements of Penal Code Sections 142, 838 or 839."

[2]The text of Penal Code section 142 follows: "Every sheriff, coroner, keeper of a jail, constable, or other peace officer, who wilfully refuses to receive or arrest any person charged with a criminal offense, is punishable by a fine not exceeding five thousand dollars, or by imprisonment in the state prison not exceeding five years or in a county jail not exceeding one year, or by both such fine and imprisonment."

[3]The full text of Penal Code section 849, as in effect at the time of the incident here at issue, recited: "(a) When an arrest is made without a warrant by a peace officer or private person, the person arrested, if not otherwise released, must, without unnecessary delay, be taken before the nearest or most accessible magistrate in the county in which the offense is triable, and a complaint stating the charge against the arrested person, must be laid before such magistrate.

"(b) Any peace officer may release from custody, instead of taking such person before a magistrate, any person arrested without a warrant whenever:

"(1) He is satisfied that there is no ground for making a criminal complaint against

ney, or the extent of the officer's discretion in making such a determination, was irrelevant to the issues at the trial below. Whether or not a peace officer determines "that there is no ground for making a criminal complaint against the person arrested," section 847 (see fn. 1 *ante*) relieves the officer from any civil liability for false arrest or false imprisonment when the arrest is made pursuant to the requirements of section 142. (*Cf.,* 52 Ops. Cal. Atty. Gen. 65.)

Passing upon a factual situation and contentions somewhat analogous to ours the court in *Shakespeare* v. *City of Pasadena,* 230 Cal.App.2d 375, 382 [40 Cal.Rptr. 871], held that where a peace officer accepts delivery of a person following a citizen's arrest, "By express statute, the officers under these circumstances are not liable for their actions (Pen. Code. § 847) and, in fact, the officers would themselves have been criminally liable had they refused to take plaintiff into custody (Pen. Code, § 142)." That case dealt with a cause of action for *false arrest.* A companion case, *Shakespeare* v. *City of Pasadena, supra,* 230 Cal.App.2d 387, under similar factual circumstances found a contention of *false imprisonment* invalid, the court stating (p. 389): ". . . plaintiff here alleges no detention in connection with her arrest . . . other than that necessarily incident to the action of the police officers in carrying out their statutory duty to accept custody of one arrested by a citizen and hold such person for appearance before a magistrate."

█ Plaintiffs urge that Mrs. Kinney's Fourth Amendment rights were violated since "A peace officer has the duty to determine reasonable or probable cause before accepting custody of a citizen arrested by another." It is of course true that an *arrest* may be made only on probable cause (*Henry* v. *United States,* 361 U.S. 98, 102 [4 L.Ed.2d 134, 138-139, 80 S.Ct. 168]; *People* v. *Curtis,* 70 Cal.2d 347, 352 [74 Cal.Rptr. 713, 450 P.2d 33].) Here the jury in returning a damage verdict against Vallentyne undoubtedly found that *he* had no such probable cause. But we are presented with no authority, and we find none, holding that a peace officer, required to take custody of a person arrested by a private citizen, must at his peril *correctly* adjudge whether the citizen had probable cause. The means of information would ordinarily be scant and any error on the officer's part would be costly; should he incorrectly find no probable cause

the person arrested. Any record of such arrest shall include a record of the release hereunder and thereafter shall not be deemed an arrest but a detention only.

"(2) The person arrested was arrested for intoxication only, and no further proceedings are desirable.

"(3) The person arrested was arrested for a misdemeanor, and has signed an agreement to appear in court or before a magistrate at a place and time designated, as provided in this code."

and refuse custody he would face criminal sanctions (§ 142, see fn. 2 *ante*), while a faulty contrary decision would subject him to civil liability to the person arrested. Such an application of the Fourth Amendment would be unreasonable. We find the instant contention to be without merit.

■ The uncontested facts and circumstances of the case admit of but one conclusion; as to Officer Wallis and his employer County of Contra Costa there was neither false arrest nor false imprisonment. And under section 847 those defendants enjoyed immunity from civil liability for conduct which was required by that section and section 142. There was accordingly no error in the judgment of nonsuit in favor of the officer and the county on the false arrest and false imprisonment issues.

It is noted that a person falsely arrested by a citizen has his remedy, as successfully pursued here, against the offending citizen.

■ Plaintiffs make incidental contentions which we shall briefly discuss. Their insistence that the instant case is to be distinguished because the officer did not "just accept custody. He conducted an independent investigation," is without merit. The evidence shows no more than an understandable reluctance to take delivery of Mrs. Kinney until Vallentyne insisted that "this is what he wanted to do." Certainly no cause of action can arise out of this humane consideration by the officer. *Abbott* v. *Cooper,* 218 Cal. 425 [23 P.2d 1027], cited by plaintiffs, is inapposite. Holding a judgment of nonsuit improper, the court ruled peace officers could be held liable for false imprisonment if they knew or should have known that an arrest was illegal. ■ In the case at bench there was no evidence of knowledge, or presumption of knowledge, of illegality. And *Abbott* v. *Cooper* was decided in 1933, long before the 1957 amendment of section 847 exempting a peace officer from civil liability for "receiving" a person arrested by a private citizen as required by section 142. In a case such as that before us the subject misdemeanor must have been committed in the presence of the arresting private citizen, not, as plaintiffs contend, the officer to whom the arrested person is delivered. (§ 837.)

■ We conclude that the trial court also properly granted nonsuit on the issue of "failure to provide medical attention."

Plaintiffs have invited our attention to the following evidence as tending to support them on that issue. While in jail Mrs. Kinney asked a jail attendant "if she'd ask these girls to turn down the radio, that it was very loud, and I told her I had a very bad headache and asked her if she could give me anything for it. . . . She said, no, she wasn't allowed to." When Mrs. Kinney was released later that day, according to her testimony, "I was very — just almost to that point where I was very — ready to collapse, by the

time I got downstairs." Nothing had been said to her "about the availability of a doctor," nor did they "offer [her] a physican," or "offer to take [her] to the County Hospital."

Government Code section 845.6[4] provides that a county is not liable for injury proximately caused by failure of an employee to furnish medical care to a jail prisoner, unless "the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care." A jail prisoner's request of an attendant for something for a headache cannot reasonably be deemed notice "that the prisoner is in need of immediate medical care." As to this issue plaintiff's contention was also unsupported by evidence.

■ Citing 2 Witkin, California Procedure (1954), page 1861, plaintiffs insist that the trial court erred in failing to specify its reasons for granting the nonsuits. They have misread Witkin, and they misapprehend the law. Witkin states (p. 1861): "It is a fundamental rule that the motion should state the precise grounds on which it is made, with the defects in the plaintiff's case clearly and particularly indicated. This gives the plaintiff an opportunity to cure the defect by introducing additional evidence." Here plaintiffs were fully advised by the *motion* for nonsuit as to the grounds on which it was based. And, a reading of the transcripts indicates that the court, although not so required, did indicate the reasons for his order of nonsuit.

■ We advert to plaintiff's next claim of error. A sheriff's captain, the jail supervisor, testified at length concerning booking and other procedures customarily taken following a misdemeanor arrest. He was then asked to assume the pertinent facts of Mrs. Kinney's arrest and her 4-hour, 20-minute, jail incarceration. The question was then asked by defendants' counsel, "From your knowledge of the procedure followed in the jail and in these matters, and the number of cases handled, in your opinion is this an unusual delay in taking her before a magistrate?" Plaintiffs' attorney objected on the grounds that the question called for the ultimate fact before the jury whose province would be invaded, and that an improper foundation had been laid. The objections were overruled and the witness answered, "I would not think that that would be an unusual delay."

---

[4]The text of Government Code section 845.6 as relevant follows: "Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but, except as otherwise provided by Section 855.8 and 856 [relating to treatment of mentally ill persons], a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care. . . ."

We are unimpressed by defendant's insistence that their question was permitted by Evidence Code section 805, which provides: "Testimony in the form of an opinion that is otherwise admissible is not objectionable because it embraces the ultimate issue to be decided by the trier of fact." The ultimate issue before the trial court was whether there had been "unnecessary delay," not "unusual delay." If it were otherwise then a jailer by persisting in unnecessary delays would make such the usual practice and thus avoid the command of section 849 (see fn. 3, *ante*). Furthermore, Evidence Code section 805 applies only to evidence "that is otherwise admissible." It is at least questionable whether the jailer's "usual practice" was "otherwise admissible"; its probative value was so tenuous that it could properly have been rejected as tending to confuse the issues or to mislead the jury. (See Evid. Code, § 352.)

Nevertheless we see no error in the trial court's ruling. The objection as to lack of foundation was clearly invalid; the sheriff's captain by training and experience was well qualified to testify concerning the usual time taken in bringing an arrested person before a magistrate. Likewise the objection that the question called for the "ultimate fact" before the jury was properly overruled, for the obvious reason that it did not call for such an ultimate fact. An objection might have been proper on grounds of immateriality or irrelevancy, but no error occurs unless the objection states a proper ground. (See Witkin, Cal. Evidence (2d ed. 1966), pp. 1195-1196, and authority there cited.) In any event we see no prejudice resulting to plaintiffs. The court and jury had been fully informed as to the jail procedures followed in this and other cases. The additional statement that the delay as to Mrs. Kinney was not unusual could have had little, if any, effect on their respective determinations. (See *People* v. *Arguello,* 244 Cal.App.2d 413, 421 [53 Cal.Rptr. 245].)

■ Plaintiffs' offer in evidence of Officer Wallis' personnel file was properly refused. No purpose, legally relevant to any issue before the court, was shown in the offer of proof. A rating for truthfulness of "average" does not as contended, "attack the officer's credibility." Nor could antecedent entries of the file reasonably tend to show the officer's "state of mind and attitude" at the time he took custody of Mrs. Kinney.

■ Plaintiffs' final contention that defense counsel improperly submitted a "case citation" to the court in the absence of opposing counsel is completely unsupported by the record, at least by any part of the record (1,165 pages) pointed out to us. We may not consider matters *dehors* the record (see 3 Witkin, Cal. Procedure (1954) p. 2229), and we need not

ourselves search the record for matter supporting plaintiffs' argument. (See *Kenworthy* v. *State,* 236 Cal.App.2d 378, 401 [46 Cal.Rptr. 396].)

The judgment is affirmed.

Molinari, P. J., and Sims, J., concurring.

Appellants' petition for a hearing by the Supreme Court was denied September 10, 1970.