**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ELIZABETH MEYERS; MILLIE
ROVETTA,

        *Plaintiffs-Appellees,*

v.

REDWOOD CITY, a municipal entity
organized and existing pursuant to
the laws of the State of California;
STEVE DOWDEN, individually and in
his capacity as a law enforcement
officer with the Redwood City
Police; CHRISTINE O'KEEFE,
individually and in her capacity as
a law enforcement officer with the
Redwood City Police Department,

        *Defendants-Appellants,*

and

TRI CITY RECOVERY; SAN MATEO
EMPLOYEES CREDIT UNION; STEVEN
A. BRUNO,

        *Defendants.*

No. 03-15872

D.C. No.
CV-02-01475-TEH

OPINION

Appeal from the United States District Court
for the Northern District of California
Thelton E. Henderson, District Judge, Presiding

Argued and Submitted
June 18, 2004—San Francisco, California

Filed March 10, 2005

3157

Before: Donald P. Lay,* Michael Daly Hawkins, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Bybee

---

*The Honorable Donald P. Lay, Senior United States Circuit Judge for
the Eighth Circuit, sitting by designation.

**COUNSEL**

Joseph C. Howard, Jr. and Todd H. Master, Redwood City, California, for the petitioners-appellants.

Robert R. Powell and Douglas D. Durward, San Jose, California, for the respondents-appellees.

**OPINION**

BYBEE, Circuit Judge:

Elizabeth Meyers and Millie Rovetta (collectively, "Plaintiffs") brought suit under 42 U.S.C. § 1983 against police officers Steve Dowden and Christine O'Keefe and Redwood City (collectively, "Defendants") for violating their Fourth and Fourteenth Amendment rights during a dispute over a vehicle repossession. Plaintiffs allege that the Redwood City police officers, acting under color of state law, unlawfully intervened in a vehicle repossession and violated their constitutional rights to due process and to be free from unreasonable searches and seizures. This is an interlocutory appeal brought by Defendants from a denial of a motion for summary judgment based upon qualified immunity. Defendants claim that they did not violate the Plaintiffs' constitutional rights and, in the alternative, that those rights were not clearly established and Defendants have qualified immunity from suit. We conclude that Defendants did not violate the Plaintiffs' constitutional rights.

## I. BACKGROUND

The California Commercial Code provides a right of repossession for secured creditors. Section 9609 states that "[a]fter default, a secured party may . . . [t]ake possession of the collateral . . . [w]ithout judicial process, if it proceeds without breach of the peace." CAL. COM. CODE § 9609(a)(1), (b)(2). The California Business and Professional Code states that, with respect to vehicles, "a repossession occurs when the repossessor gains entry to the collateral." CAL. BUS. & PROF. CODE § 7507.12. However, police who aid a self-help repossessor may be liable under Section 1983,

> not only when there has been an actual "taking" of property by a police officer, but also when the officer assists in effectuating a repossession over the

> objection of a debtor or so intimidates a debtor as to cause him to refrain from exercising his legal right to resist a repossession. While mere acquiescence by the police to "stand by in case of trouble" is insufficient to convert a repossession into state action, police intervention and aid in the repossession does constitute state action.

*Harris v. City of Roseburg*, 664 F.2d 1121, 1127 (9th Cir. 1981).

Plaintiff Meyers financed a Lexus through the San Mateo County Employees Credit Union ("Credit Union"). When she became delinquent in those payments, the Credit Union hired Tri-City Recovery ("Tri-City") to repossess Meyers's vehicle. Tri-City in turn hired Steve Bruno to effect the actual repossession. On April 19, 2001, at three o'clock in the morning, Bruno knocked on the front door and demanded the keys to Meyers's car. Meyers attempted to explain that there was already a valid arrangement for payment, but Bruno informed her of his right to take the car and continued to demand the keys to the vehicle. A heated argument ensued, as Meyers informed Bruno that he was trespassing and asked him to hold off repossession for a few hours until she could call her insurance company and the Credit Union to resolve the problem. Bruno refused this request and continued to demand the keys and insist that he was taking the car.

Bruno left the doorstep and proceeded to circle the car, presumably looking for a way into the vehicle. Meyers grabbed her keys and headed towards the car to drive away. Meyers alleges that, at that point, a scuffle occurred in which Bruno lunged at her, grabbing her by her waist and injuring surgical scars from her recent caesarian section as he lifted her off her feet. After Bruno released Meyers, Meyers circled the Lexus in an attempt to open and lock the car door before Bruno could make it to the door. Meyers opened the car with her remote control and managed to get into the driver's seat.

Before she could close the door, however, Bruno blocked her efforts to close the door, so that Meyers was halfway in the driver's seat. Bruno allegedly attacked her, trying to remove her forcefully from the car by pulling at her arms, thigh, and head. Meyers's mother, Rovetta, then ran up behind Bruno to grab his belt and pull him off her daughter. Bruno stomped on Rovetta's foot and threw her into the nearby bushes, and Rovetta grabbed Bruno around the neck.

During this melee, Meyers started the car and backed it part way down the driveway before catching the open door on a bush. Bruno yelled to his companion to block the Lexus in the driveway with another vehicle at the scene. Meyers screamed for her father to get his shotgun, at which point Bruno called 911. Officer O'Keefe and six other unnamed officers appeared shortly and separated Bruno from the Plaintiffs.

Officer O'Keefe interviewed both parties to ascertain what had occurred. Plaintiffs exhibited their injuries and explained their version of the events. Bruno showed the police his identification and informed them that he was hired to repossess Meyers's car and had already gained entry into the car. He told them that he had used a slim jim tool to gain access to the Lexus, and that after he had entered the vehicle he had approached Meyers's house to ask her to remove her property from inside the Lexus. He told police that Plaintiffs physically attacked him, and the officers noted that both his chest and arms were scratched and bleeding. Both Meyers and Bruno showed the officers paperwork purporting to establish their right to the car.

At some point Bruno told the officers that he wanted to effect a citizen's arrest against Plaintiffs for assaulting him. Plaintiffs informed the officers that they, too, wished to effect a citizen's arrest against Bruno for assault and trespass. Officer O'Keefe satisfied herself that Bruno had been authorized to repossess the vehicle and asked Bruno something to the effect of, "Is there any way we can resolve this situation

peacefully?" Bruno stated that he would not press charges if Plaintiffs would let him take the vehicle away. According to the complaint, Officer O'Keefe went to the Plaintiffs and told them "It looks like this is what we are going to do here, either you are going to let [Bruno] take the car, or we are going to arrest you." Plaintiffs allege that they were "incredulous" and insisted on speaking to a police sergeant. Officer Dowden was summoned. After being apprised of the situation, Dowden relayed to Plaintiffs that giving the car to Bruno was their only option to avoid arrest. Plaintiffs, feeling they had no choice, agreed to let Bruno take the car.

Meyers and Rovetta brought suit against Redwood City, Officers Dowden and O'Keefe, Tri-City, Bruno, and the Credit Union for violation of their constitutional rights and for state tort claims for battery, infliction of emotional distress, false imprisonment, and trespass. Meyers and Rovetta later stipulated to dismiss the § 1983 claims against Tri-City, Bruno, and the Credit Union. The municipal Defendants filed a motion for summary judgment, arguing that Plaintiffs had not shown that Defendants violated their constitutional rights, and that even if there was a constitutional violation, Defendants were entitled to qualified immunity.

The district court denied the Defendants' motion. The court began with the observation that California permits "self-help" repossession "but only if the repossession 'proceeds without breach of the peace.' " (quoting CAL. COM. CODE § 9609(b)(2)). The district court found that there were "substantial material disputes of fact as to what occurred" before and after the officers arrived but that, viewing the disputed facts in the light most favorable to the Plaintiffs, there was a breach of the peace and Bruno had no right to repossess the car. Relying on our decision in *Harris*, the district court held that "[w]hile the police may simply 'stand by' in case of trouble, they cannot intervene and aid in the repossession, since doing so converts the possession into 'state action,' and the state may not repossess a debtor's property without affording

due process." (citations omitted). The court found that Plaintiffs presented evidence that, if believed by a jury, the officers "took sides in the repossession dispute after improperly concluding that the repossession was valid notwithstanding the breach of peace." According to the court, the officers misused their authority by intervening to assist Bruno or by intimidating Meyers so that she refrained from resisting the unlawful repossession. The court also found that the law governing repossession of cars was well established to defeat Defendants' claim of qualified immunity. The district court denied Defendants' motion for summary judgment on the grounds that there was evidence of a constitutional violation and that Plaintiffs' constitutional rights were so clearly established by *Harris* that the Defendants were not entitled to qualified immunity.

## II.   DISCUSSION

There are two questions presented by the Defendants' motion for summary judgment in this § 1983 case. Both are questions of law. The first is whether their actions violated the Plaintiffs' constitutional rights. We must consider whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.*

The second question is, assuming Defendants' actions violated the Plaintiffs' constitutional rights, whether those rights were so "clearly established," *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), that "in the light of pre-existing law the unlawfulness [of the challenged action was] apparent," *Anderson v. Creighton*, 483 U.S. 635, 640 (1987), and the officers should answer in tort. The officers are immune unless "the law clearly proscribed the actions" taken. *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985). Accordingly, qualified immunity

protects those officials "who are required to exercise their discretion," *Butz v. Economou*, 438 U.S. 478, 506 (1978), and who "routinely make close decisions in the exercise of the broad authority that necessarily is delegated to them." *Davis v. Scherer*, 468 U.S. 183, 196 (1984).

Where the constitutional question is a close one, we might prefer to turn to the second, and easier question, whether the officers violated a clearly established constitutional right. The Supreme Court in *Saucier*, however, made clear that we must determine whether a constitutional right was violated first "to set forth principles which will become the basis for a holding that a right is clearly established." *Saucier*, 533 U.S. at 201. Otherwise, "[t]he law might be deprived of this explanation were a court simply to skip ahead to the question whether the law clearly established that the officer's conduct was unlawful in the circumstances of the case." *Id.* at 201. *See Hell's Angels Motorcycle Corp. v. McKinley*, 360 F.3d 930, 933 (9th Cir. 2004). *See also Brosseau v. Haugen*, 125 S. Ct. 596, 598-99 (2004) (per curiam). We are bound by the Court's decision in *Saucier* and our own subsequent decision in *Hell's Angels* to decide the constitutional question first and then address qualified immunity. Although we conclude that the Defendants did not violate the constitutional rights of the Plaintiffs, given the complexity of the question, we will address the easier question of qualified immunity as well. *See Brosseau*, 125 S. Ct. at 598 ("express[ing] no view as to the correctness of the Court of Appeals' decision on the constitutional question" but finding officer entitled to qualified immunity).

A

**[1]** Plaintiffs allege that the Defendants violated their constitutional rights under the Fourth and Fourteenth Amendments. In order to prevail on their due process claim, the Plaintiffs must demonstrate that the Defendants, while acting under color of state law, deprived Plaintiffs of their property without due process of law. U.S. CONST. amend. XIV, § 1. *See*

*Fuentes v. Shevin*, 407 U.S. 67, 80 (1972). In order to prevail on their search and seizure claim, the Plaintiffs must demonstrate that the Defendants, while acting under color of state law, unreasonably seized the Plaintiffs' "persons, houses, papers [or] effects." U.S. CONST. amends. IV; XIV, § 1. *See Soldal v. Cook County*, 506 U.S. 56, 61-62 (1992).

**[2]** In the circumstances of this case, the Fourth and Fourteenth Amendment inquiries are, for all relevant purposes, the same. The critical question in this case is whether the officers, who were plainly acting under color of state law, unlawfully facilitated Bruno's efforts to repossess Meyers's Lexus, thereby unreasonably seizing her car or depriving her of property without due process of law. Indeed, for purpose of this decision only, we may assume that Meyers suffered both the deprivation of her car without due process of law and the unreasonable seizure of her car. However, on this record, we conclude that the officers were not so enmeshed in effectuating the repossession that the deprivation and seizure of Meyers's car is attributable to the state.

The "state action" doctrine in repossession and other self-help remedies has been a complicated area of the law. Many of the cases have focused on whether or at what point a private party employing a self-help remedy has assumed the mantle of the state and can be held to answer under Section 1983 for violating the debtor's constitutional rights. *See, e.g.*, *Lugar v. Edmonson Oil Co.*, 457 U.S. 922 (1982) (by obtaining writ of prejudgment attachment, oil company was state actor; company was answerable under § 1983); *Flagg Bros. v. Brooks*, 436 U.S. 149 (1978) (creditor's repossession was not state action; creditor not subject to suit under § 1983); *Adams*, 492 F.2d at 329.

**[3]** This case presents the flip side to those cases: At what point have the police become so entangled in a private self-help remedy that they may be held to answer under Section 1983? *See, e.g.*, *Soldal*, 506 U.S. at 60-61 n.6 (declining to

review lower court conclusion that police participation constituted state action); *Howerton v. Gabica*, 708 F.2d 380, 383-84 (9th Cir. 1983) (finding state action where police were present at each step of the eviction from a trailer and recommended that the owners leave the trailer); *Harris*, 664 F.2d at 1127 (finding state action where police participated in semi-tractor repossession). *But see United States v. Coleman*, 628 F.2d 961, 964 (6th Cir. 1980) (finding that "mere acquiescence by the police to 'stand by in case of trouble' was insufficient to convert the repossession of the truck into state action."); *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 512-13 (5th Cir. 1980) (finding that plaintiffs did not provide evidence of police officers acting in concert with defendants during a repossession to deprive plaintiffs of constitutional rights).

**[4]** Our principal case is *Harris*. Harris had purchased a semi-tractor from Cantwell, who retained a security interest in the tractor. When Harris fell behind on his payments, Cantwell decided to repossess the tractor. Cantwell alerted the Roseburg City (Oregon) police that he intended to repossess the tractor and that he feared violence, and asked the police to "stand by" during the repossession. As Cantwell had feared, Harris confronted him. One of the police officers then stepped between them and ordered Harris to stand back because Cantwell was there to repossess the truck. *Harris*, 664 F.2d at 1124. We held that the officers did not have to physically take possession of Harris's property to deprive him of it. It was enough that "the officer assists in effectuating a repossession over the objection of a debtor." *Id.* at 1127. Accordingly, although "mere acquiescence by the police to 'stand by in case of trouble' is insufficient to convert a repossession into state action, police intervention and aid in the repossession does constitute state action." *Id. See also Marcus v. McCollum*, 394 F.3d 813, 818-819 (10th Cir. 2004) (collecting cases).

**[5]** The melee in Meyer's driveway was not conducted under the purview of the officers. Unlike in *Harris*, Officers

Dowden and O'Keefe were not alerted in advance to the repossession and asked to "stand by" to ensure that the repossession went smoothly. In *Harris*, Cantwell secured the presence of the officers precisely to guarantee that Harris did not protest the repossession and, thus, that the repossession could proceed without breach of the peace. *Harris*, 664 F.2d at 1124. When Harris protested the repossession, the officers intervened on behalf of Cantwell. The officers' presence was integral to the repossession, and they were active participants in it.

[6] By contrast, Officers Dowden and O'Keefe were summoned to a scene not of their making. Clearly, a "breach of the peace" within the meaning of Section 9609 was in progress. The officers then heard conflicting stories about whether Bruno had taken effective possession of the car prior to the breach. The officers were caught between two sections of the California Code, one which says that a repossessor may take the collateral if he can do so without breaching the peace, CAL. COM. CODE § 9609(b)(2), and a second which says that the repossession is complete when the repossessor gets access to the car, CAL. BUS. & PROF. CODE § 7507.12. Even if the officers understood how those two sections are supposed to work together, the officers had little means for resolving the dispute over possession of the car at the scene.[1]

[7] At that point, both Bruno and Meyers insisted on making a citizen's arrest of the other. Under the California code, private persons may arrest another for offenses committed or attempted in their presence. CAL. PENAL CODE § 837. "A private person who has arrested another for the commission of a public offense must, without unnecessary delay, . . . deliver

---

[1]We have no occasion here to decide whether, under California law, one who gets access to a vehicle (making repossession complete under § 7507.12) is barred from taking it (under § 9609(b)(2)) if a breach of the peace occurs after the repossession but before the repossessor can remove the vehicle from the property.

him or her to a peace officer." CAL. PENAL CODE § 847(a). A private person making a citizen's arrest need not physically take the suspect into custody, but may delegate that responsibility to an officer, and the act of arrest "may be implied from the citizen's act of summoning an officer, reporting the offense, and pointing out the suspect." *Padilla v. Meese*, 184 Cal. App. 3d 1022, 1030-31 (1986). California law gives the officer the choice of making the citizen's arrest or not, but there are powerful incentives to make the arrest. On the one hand, an officer who makes an arrest pursuant to a citizen's complaint is not subject to liability for false arrest or false imprisonment. CAL. PENAL CODE § 847(b)(3). On the other hand, an officer does not have to effect the arrest if he or she "is satisfied that there are insufficient grounds for making a criminal complaint[.]" CAL. PENAL CODE § 849(b)(1). However, there is a catch: If it turns out that there were grounds for the complaint and the officer failed to take the suspect into custody, the officer is subject to fines or imprisonment. CAL. PENAL CODE § 142(a).[2] The California courts have held that even though an officer may decline to take a suspect into custody under Section 849 if he finds no grounds for the complaint, an officer cannot be sued civilly if he makes the arrest and, it turns out, there were no grounds for the citizen's arrest. *Kinney v. County of Contra Costa*, 8 Cal. App. 3d 761, 768-69 (Cal. Ct. App. 1970); *Shakespeare v. City of Pasadena*, 230 Cal. App. 2d 375, 382 (Cal. Ct. App. 1964). Noting the conundrum in the law, California courts have held that the law does not compel officers to choose between civil liability for false arrest and criminal liability for failing to make an arrest, and that officers may choose the safe course and simply make the citizen's arrest:

---

[2]"Any peace officer who has the authority to receive or arrest a person charged with a criminal offense and willfully refuses to receive or arrest that person shall be punished by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in the state prison, or in a county jail not exceeding one year, or by both that fine and imprisonment." CAL. PENAL CODE § 142(a).

[W]e are presented with no authority, and we find none, holding that a peace officer, required to take custody of a person arrested by a private citizen, must at his peril *correctly* adjudge whether the citizen had probable cause. The means of information would ordinarily be scant and any error on the officer's part would be costly; should he incorrectly find no probable cause and refuse custody he would face criminal sanctions, while a faulty contrary decision would subject him to civil liability to the person arrested.

*Kinney*, 8 Cal. App. 3d at 768-69 (citations omitted). *See also Arpin*, 261 F.3d at 920-21.

**[8]** Once Bruno told the officers he wanted to press charges, the officers could decline to arrest Meyers only if they determined that there was "no ground" for the arrest, but the risk of error for failure to arrest her was criminal fines and imprisonment. Having seen the blood from the scratches on Bruno's chest and arms, the officers were bound to take Meyers in on Bruno's citizen's arrest. By the same token, when Meyers told the officers that she too wished to press charges, the officers were equally bound to arrest Bruno.

When the officers asked "Is there any way we can resolve this situation peacefully?" they were trying to extricate two citizens out of a mutually difficult situation, one that was likely to result in both of them being arrested. The officers simply presented to Meyers her options: she could assert her rights to the car, and Bruno would press charges and the officers would have to arrest her. Or, she could avoid arrest and fight Bruno and the Credit Union another day. She could, of course, have pressed her own charges against Bruno, but if he was going to the station, she was likely going with him.

**[9]** This looks like a no-win situation for Meyers, but it was Bruno, not the officers, who ultimately created the Hobson's

choice: He would not effect his citizen's arrest if Meyers would let him take the car. Meyers had to make a choice between suffering arrest (and perhaps leaving her baby), or giving up the car until the following day when she could get everything straightened out with the Credit Union. Forcing Meyers to choose between her liberty or her property was not a situation of the officers' creation but a consequence of a nasty confrontation. Bruno simply took advantage of the situation and California law. Had the officers declined to present the choice to Meyers, Meyers could have kept her car, but both she and Bruno would likely have ended up at the police station. Presenting Meyers with such a choice — albeit a choice between two unpleasant consequences — does not violate her Due Process or Fourth Amendment rights.

**[10]** We thus disagree with the district court that the question was whether the officers reasonably believed that Bruno had effected repossession and was entitled to take the car. The officers could have reasonably believed that Bruno had a colorable claim to the car and, without resolving whether Bruno was entitled in law and fact to repossess the car, determined that they had to present the options to Meyers and Rovetta. In this situation, it is Bruno, not the officers, who risks suit for either wrongful repossession or false arrest. Even if the officers mistakenly thought that Bruno had gained access to the car and was entitled to repossess it, their presenting the choice to Meyers did not violate her Fourth and Fourteenth Amendment rights.

B

**[11]** Even if we thought that the officers crossed a line established by *Harris*, the officers are surely entitled to qualified immunity because they could not have known that they were violating the Plaintiffs' "clearly established" constitutional rights. *Harlow*, 457 U.S. at 818. Even with a copy of *Harris* in their back pockets, the officers could not have determined at what point in the middle of this messy repossession

they deprived Meyers of her property without due process of law. Meyers may have every right to be unhappy with the situation, but the officers cannot be faulted for attempting to settle this late-night confrontation peacefully. In these circumstances, it would not "be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

## III.  CONCLUSION

Officers Dowden and O'Keefe did not violate Plaintiffs' constitutional rights when they reasonably acted to restore order during a tense and difficult situation. The district court erred in denying summary judgment on this issue. In any event, the officers are entitled to qualified immunity for their actions. The district court's decision is reversed and the case is remanded for further proceedings consistent with this judgment.

**REVERSED**.