Filed 3/5/21  Cloud v. City of Davis CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| JAN CLOUD, | C090310 |
| Plaintiff and Appellant, | (Super. Ct. No. CV172151) |
| v. | |
| CITY OF DAVIS, | |
| Defendant and Respondent. | |

Jan Cloud (Cloud) was injured when she fell in a municipal parking lot in the City of Davis (City).  Cloud sued, alleging a wheel stop[1] in the parking lot was a dangerous condition of public property within the meaning of Government Code section 835.[2]  The City moved for summary judgment.  The trial court granted the motion and entered

---

[1] The parties use various terms to describe the object in the parking lot, including "wheel stop," "parking stop," and "bumper block."  For the most part, we use the term "wheel stop."

[2] Undesignated statutory references are to the Government Code.

1

judgment in the City's favor. Cloud appeals, arguing there are triable issues of material fact regarding the City's actual or constructive notice of the alleged dangerous condition, or negligent creation of the alleged dangerous condition. We disagree and affirm the judgment.

## I. BACKGROUND

Cloud attended a children's gymnastics program in the City on March 25, 2017. She parked in a parking lot near Davis City Hall (City Hall). The parking lot is bordered on the north by an athletic field. Cloud backed into a parking space directly south of the athletic field. She parked next to a gray sedan, which was parked "nose in," with the front end facing the athletic field. Her son, Dustin Cloud, parked on the other side of the gray sedan.[3]

Cloud and Dustin returned to their cars after the gymnastics program and a visit to the nearby farmers' market. Cloud helped to secure Dustin's children into their car seats and then turned to leave. She walked away from Dustin's car, leaving the pavement briefly to walk around the front end of the gray sedan. She reached the corner of the gray sedan and turned to wave goodbye to her grandchildren. Moments later, she fell to the ground, fracturing her left femoral head.

*A.* *Cloud's Second Amended Complaint*

Cloud sued the City. Her second amended complaint, which is the operative pleading, asserts a single cause of action for a dangerous condition of public property under section 835. The second amended complaint alleges: "As [Cloud] walked around her vehicle, her foot caught a parking bumper or 'wheel stop' that was hidden from view by shadows and had been painted black by the city or it's [*sic*] employees. The parking bumper was a substantial factor in causing her to fall as she could not see the parking

---

[3] We refer to Dustin by his first name for purposes of clarity.

bumper so she tripped over the object and fractured her hip which required surgery. The parking bumper or wheel stop was in an area known to be frequented by the general public and dangerous at the time because it was painted the same black color of the asphalt [and] was hidden from pedestrian view, especially when in the shadows of parked vehicles. Defendant City knows that parking bumpers are known tripping hazards if not painted a contrasting color to the ground. Further, this parking bumper was dangerous as it is 'hidden' from view of plaintiff by shadows and the black paint in violation of applicable building codes and ADA accessible design standards creating a tripping hazard." The second amended complaint seeks compensatory damages according to proof.

B.     *The City's Motion for Summary Judgment*

The City moved for summary judgment. The City argued that Cloud could not establish the existence of a dangerous condition, actual or constructive notice of any such condition, or causation. The City also argued it was entitled to design immunity pursuant to section 830.6.

The City's motion was supported by deposition testimony from Cloud and Dustin that cumulatively raised doubts as to whether the wheel stop in the parking stall occupied by the gray sedan (the subject wheel stop) caused Cloud's fall.[4] The motion was also supported by evidence describing the design and accident history of the parking lot, much of which was undisputed. It is this evidence on which the trial court relied in granting summary judgment.

The parking lot was redesigned and restriped in 2003 as part of a project called the "City of Davis City Hall Parking Lot Expansion." Steve Knopf, a senior engineering

---

[4] Cloud could not remember striking the subject wheel stop with her foot and may not have been looking at the ground prior to falling. Dustin, for his part, saw his mother disappear from view behind the gray sedan, but did not see what caused her fall.

3

assistant for the City's Public Works Department (Department), prepared the design plans and specifications for the project, which was intended to increase the number of parking spaces in the lot. The plans called for the installation of wheel stops in each of the parking spaces in the newly redesigned and expanded lot. The plans specified that the wheel stops were to be positioned two feet from the front of each parking space, and six inches from the limit line on the left side. The plans further specified that the wheel stops were to be four feet long and composed of recycled rubber with white diagonal stripes.

Michael Mitchell, a senior civil engineer for the Department, and city engineer Patrick Fitzsimmons each reviewed and approved the plans. Fitzsimmons and Mitchell then issued a report recommending that the city council also approve the plans. The city council approved the plans in May 2003. The parking lot expansion project was completed according to the approved plans in November 2003.

Zoe Mirabile, the city clerk, manages the office responsible for receiving and responding to governmental tort claims against the City. According to Mirabile, no trip and fall claims had been made for accidents in the parking lot from the time the project was completed in November 2003 through the time of Cloud's fall in March 2017.

The Department is responsible for maintaining the parking lot. The City relies on employees and members of the general public to initiate maintenance requests for problems in the parking lot. According to Eric Spann, a senior public works supervisor for the Department, City employees, including members of the Department, regularly visit City Hall, and would be expected to identify and report any obvious maintenance needs in the parking lot. The Department had not performed any maintenance on the wheel stops in the parking lot or received any requests for such maintenance. Except for Cloud, the Department had not received any complaints that the wheel stops were dangerous or hard to see. The City does not conduct periodic inspections of the parking lot.

4

*B.*    *Cloud's Opposition*

Cloud opposed the City's motion, relying on evidence that the subject wheel stop was black and difficult to see, given the color of the surrounding asphalt and shadows cast by nearby trees and parked cars.  Cloud offered evidence that three of four white contrast stripes were missing from the subject wheel stop.  Cloud made no attempt to explain how the contrast stripes came to be missing, or when they ceased to be present or visible on the subject wheel stop.

Cloud relied on circumstantial evidence that the subject wheel stop caused her fall.[5]  Cloud also relied on a declaration by Zachary Moore, a safety engineer and accident reconstruction expert.  Moore averred that he had personally inspected the parking lot and subject wheel stop, and determined, based on photographs, that they were in substantially the same condition as they were on the day of Cloud's fall.  Moore further averred that he had reviewed applicable building codes (including versions of the City of Davis Municipal Code and California Building Code), as well as other pedestrian safety standards (such as American Society of Testing and Materials (ASTM) F1637-13, "Standard Practice for Safe Walking Surfaces"), and slip and fall treatises (such as Slip & Fall Practice, by Charles E. Turnbow).  Based on the foregoing, Moore opined that the subject wheel stop created a dangerous condition in three ways.

First, Moore opined that wheel stops are inherently dangerous inasmuch as they "protrude above the walking surface" and create an unnecessary tripping hazard.  According to Moore, wheel stops "are a well know[n] tripping hazard and have been

───────────────

[5] Specifically, Cloud relied on evidence that: (1) she fell as she attempted to navigate the space between her car and the gray sedan; (2) the subject wheel stop extended out from under the gray sedan into the same space; (3) the subject wheel stop was the same color as the surrounding asphalt and hard to see; and (4) Dustin stumbled over the subject wheel stop when he traveled the same path moments later.

5

identified as such in safety literature since the 1960's." In Moore's opinion, paint or steel bollards should have been used to mark the parking spaces, rather than wheel stops.

Second, Moore opined that the inherent dangers of wheel stops were exacerbated here by the "placement and position" of the subject wheel stop "only [six inches] from the parking stall line." According to Moore, "[t]he unnecessary placement of the subject wheel stop, only [six inches] from the parking stall line, made the wheel stop a hazardous obstacle for pedestrians attempting to traverse the area." In Moore's opinion, a more appropriate place for the subject wheel stop would have been 18 inches from the parking space limit line.

Third, Moore opined that the aforementioned dangers were exacerbated by the dark color of the subject wheel stop, which was similar to the surrounding asphalt, making it hard to see. According to Moore, "the wheel stop was not readily apparent or 'open and obvious' and in fact was difficult to perceive." Moore observed that the subject wheel stop would have been even harder to see with a car in the corresponding parking stall, as the car would have covered much of the wheel stop and cast shadows on the ground.

Moore acknowledged that the subject wheel stop originally featured four contrast stripes, evidently for pedestrian safety. Nevertheless, he noted that three of the four contrast stripes were missing. He also observed that the City does not conduct routine inspections of the parking lot. Had the City inspected the parking lot, Moore opined, the missing contrast stripes would have been discovered and replaced.

Cloud also purported to rely on excerpts of the deposition testimony of Spann and Knopf. However, Cloud offered only an excerpt of the rough draft of Spann's deposition transcript, and no excerpt, of any kind, for Knopf. Instead, Cloud appears to have submitted two copies of the excerpt of the rough draft of Spann's deposition transcript.

6

C.      *The City's Reply*

The City replied to Cloud's opposition, emphasizing the absence of any genuine issue of disputed fact establishing that the City had actual or constructive notice of the alleged dangerous condition. The City also raised multiple objections to Cloud's evidence. Among other things, the City objected to Cloud's use of the rough transcript of Spann's deposition, her purported use of the rough transcript of Knopf's deposition, and her use of photographs showing only one side of the subject wheel stop. The City also raised numerous objections to Moore's declaration.

D.      *The Trial Court's Ruling*

The trial court heard oral argument on the City's motion. Following argument, the trial court granted summary judgment, finding the City had shown that an element of Cloud's cause of action could not be established. Specifically, the trial court found that Cloud failed to raise a genuine issue of material fact as to whether the City had actual or constructive notice of the alleged dangerous condition, or negligently or wrongfully created the alleged dangerous condition. The trial court declined to reach the City's other asserted grounds for summary judgment.

The trial court sustained the City's objections to Cloud's use of the twice submitted rough draft of Spann's deposition testimony, her purported use of the absent rough draft of Knopf's deposition testimony, and the one-sided photographs of the subject wheel stop. The trial court also sustained many of the City's objections to the Moore declaration. As relevant here, the trial court sustained the City's objections to numerous references to building standards and pedestrian safety literature in Moore's declaration, as well as the purported excerpts of those materials attached thereto.

The trial court entered judgment in the City's favor on October 11, 2019. This appeal timely followed.

## II. DISCUSSION

Cloud argues the evidence created triable issues of material fact that precluded granting the City's motion for summary judgment. As we explain, we find no triable issue of material fact and conclude that summary judgment was properly granted.

*A.    Standard of Review*

Summary judgment is appropriate when all the papers submitted show there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.) "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).)

A defendant moving for summary judgment has the initial burden of presenting evidence that a cause of action lacks merit because the plaintiff cannot establish an element of the cause of action or there is a complete defense. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar, supra,* 25 Cal.4th at p. 853; *Husman v. Toyota Motor Credit Corp.* (2017) 12 Cal.App.5th 1168, 1179-1180.) This may be done by affirmatively proving that a specified fact does not exist or by showing that the plaintiff has no evidence to prove that fact. (*Cole v. Town of Los Gatos* (2012) 205 Cal.App.4th 749, 756.)

Once the moving defendant has met its initial burden, the burden shifts to the nonmoving plaintiff to show that a triable issue of material fact exists. (*Aguilar, supra,* 25 Cal.4th at p. 850.) "To create a triable issue of material fact, the opposition evidence must be directed to issues raised by the pleadings." (*Distefano v. Forester* (2001) 85 Cal.App.4th 1249, 1264.) " " '[A] party cannot successfully resist summary judgment on a theory not pleaded.' " " (*Comunidad en Accion v. Los Angeles City Council* (2013) 219 Cal.App.4th 1116, 1125.) A triable issue of material fact exists if, and only if, the

8

evidence reasonably permits the trier of fact to find the contested fact in favor of the plaintiff in accordance with the applicable standard of proof. (*Aguilar, supra,* at p. 850.)

We review an order granting summary judgment de novo, applying the same three-step analysis as the trial court. (*Aguilar, supra,* 25 Cal.4th at p. 860; *Hamburg v. Wal-Mart Stores, Inc.* (2004) 116 Cal.App.4th 497, 503 (*Hamburg*).) First, we identify the issues framed by the pleadings, as those are the allegations to which the motion must respond. (*Hamburg, supra,* at p. 503.) We next determine whether the defendant's showing establishes facts which negate the plaintiff's claims and justify a judgment in the defendant's favor. (*Ibid.*) If the defendant has made such a showing, we then determine whether the plaintiff has demonstrated the existence of a triable, material issue of fact. (*Ibid.*)

We view the evidence in a light favorable to the party opposing summary judgment or adjudication, liberally construing that party's evidence while strictly scrutinizing the moving party's showing and resolving all doubts concerning the evidence in favor of the opposing party. (*Patterson v. Domino's Pizza, LLC* (2014) 60 Cal.4th 474, 499-500.) We consider all of the evidence offered in connection with the motion except that which the trial court properly excluded. (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 717; *Gin v. Pennsylvania Life Ins. Co.* (2005) 134 Cal.App.4th 939, 946.) The trial court's stated reasons for granting summary judgment are not binding on us, because we review the court's ruling, not its rationale. (*Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336; *California School of Culinary Arts v. Lujan* (2003) 112 Cal.App.4th 16, 22 [" 'the appellate court may affirm a summary judgment on any correct legal theory, as long as the parties had an adequate opportunity to address the theory in the trial court' "].)

B.     *Government Claims Act*

The City's potential liability in this case is governed by section 835, which provides: "Except as provided by statute, a public entity is liable for injury caused by a

9

dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

A "dangerous condition" is defined as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." (§ 830, subd. (a).) As we shall see, Cloud variously defines the alleged dangerous condition in the parking lot as (1) a wheel stop missing three of four contrast stripes, (2) wheel stops generally, and (3) a wheel stop positioned six inches from the limit line.

Cloud argues summary judgment was improper because she presented evidence raising triable issues as to the City's actual or constructive notice of a dangerous condition, defined as a wheel stop missing three of four contrast stripes. Cloud additionally argues that summary judgment was improper because she presented evidence raising triable issues as to the City's negligent creation of a dangerous condition, defined as a parking lot that makes use of wheel stops generally, or the installation of a wheel stop six inches from the limit line. We address these contentions in turn.

1.      *Actual or Constructive Notice*

Cloud argues she satisfied her burden of demonstrating the existence of triable issues of material fact as to the City's actual or constructive notice of an alleged dangerous condition, defined here as a wheel stop missing three of four contrast stripes. She relies on evidence showing the subject wheel stop is located in the City Hall parking

10

lot, which is not subject to routine inspections. We conclude Cloud has failed to carry her burden.

Section 835.2 defines actual and constructive notice. A public entity has actual notice of a dangerous condition under section 835.2, subdivision (a) if it had "actual knowledge of the existence of the condition and knew or should have know of its dangerous character." To create a triable issue of fact, there must be "some evidence that the employees had knowledge of the particular dangerous condition in question." (*State v. Superior Court (Rodenhuis)* (1968) 263 Cal.App.2d 396, 399 (*Rodenhuis*).) Here, the undisputed evidence shows that the City never received any complaints or maintenance requests for the subject wheel stop or any other wheel stops in the parking lot. The undisputed evidence also establishes the absence of any records reflecting prior trip and fall accidents in the parking lot. Cloud offered no evidence contradicting the City's showing, and therefore failed to raise a triable issue as to actual notice, a conclusion she does not seriously dispute.

Cloud concentrates most of her energy on constructive notice. She argues the following evidence was sufficient to raise a triable issue of material fact: (1) the subject wheel stop had white contrast stripes when installed in 2003; (2) three of four contrast stripes were missing when she fell in 2017; and (3) the City did not inspect the wheel stops in the intervening 14-year period.[6] This evidence fails to raise a triable issue of material fact on the issue of constructive notice.

To establish constructive notice under section 835.2, subdivision (b), a plaintiff must show the dangerous condition "existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered

---

[6] Cloud's opening brief indicates that the subject wheel stop was installed in 2006. However, it is undisputed that the subject wheel stop was installed as part of the parking lot expansion project, which was completed in November 2003.

11

the condition and its dangerous character." Put another way, "[a] claim for constructive notice has *two* threshold elements. [Citation.] A plaintiff must establish that the dangerous condition has existed for a sufficient period of time and that the dangerous condition was obvious." (*Heskel v. City of San Diego* (2014) 227 Cal.App.4th 313, 320.) "Where the plaintiff fails to present direct or circumstantial evidence as to either element, his claim is deficient as a matter of law." (*Id.* at p. 317.)

Cloud failed to carry her burden on summary judgment because she presented no evidence indicating that the white contrast stripes were missing for a sufficient time to provide constructive notice. Even assuming Cloud demonstrated a triable issue with respect to obviousness (an assumption undermined by Moore's opinion that "the wheel stop was not readily apparent or 'open and obvious' and in fact was difficult to perceive"), her constructive notice theory would still fail because there was no evidence showing the dangerous condition was present for any length of time before the accident. No evidence suggests the white contrast stripes were missing from the subject wheel stop long enough for City employees to discover the problem in the exercise of due care. There was no evidence showing when the contrast stripes went missing, or how they went missing. Likewise, there was no evidence suggesting that contrast stripes were missing from every wheel stop in the parking lot or only the subject wheel stop. In short, Cloud presented no evidence, of any kind, that would permit a reasonable jury to infer that the contrast stripes had been missing for months or years, rather than hours or days.[7] So far as the record reveals, the contrast stripes could have disappeared from the subject wheel stop mere moments before Cloud's fall. We therefore conclude that Cloud has failed to raise a triable issue that the dangerous condition existed for a sufficient time, an

---

[7] Cloud argues the contrast stripes "deteriorated," suggesting a process that may have taken place over some period of time. However, no evidence supports Cloud's characterization.

essential element of constructive notice. (*Heskel v. City of San Diego, supra,* 227 Cal.App.4th at p. 320.) It follows that Cloud has also failed to raise a triable issue as to constructive notice, an essential element of liability under section 835.

Cloud resists this conclusion, arguing the City's failure to conduct periodic inspections of the parking lot renders the time element "irrelevant," since there was no time in the future in which the City would have inspected the subject wheel stop and discovered the missing contrast stripes. Cloud's argument fails to persuade. Section 835.2, subdivision (b) requires that a plaintiff claiming constructive notice show both that the dangerous condition was obvious and that the condition existed for a sufficient period of time. (§ 835.2, subd. (b); *Heskel v. City of San Diego, supra,* 227 Cal.App.4th at p. 320.) Under the statute, obviousness and time are the yardsticks by which the trier of fact measures whether "the public entity, in the exercise of due care, should have discovered the condition and its dangerous character." (§ 835.2, subd. (b).) Evidence of an inspection system is undeniably relevant to the ultimate question of whether the dangerous condition should have been discovered in the exercise of due care. Indeed, the statute so states.[8] But California case law is clear that such evidence is "secondary" to any consideration of the statutory elements of constructive notice under section 835.2, subdivision (b). As one court of appeal has explained, "constructive notice may be imputed if it can be shown that an *obvious* danger existed for an adequate period of time

_____

[8] Section 835.2, subdivision (b) provides, in part: "On the issue of due care, admissible evidence includes but is not limited to evidence as to: [¶] (1) Whether the existence of the condition and its dangerous character would have been discovered by an inspection system that was reasonably adequate (considering the practicability and cost of inspection weighed against the likelihood and magnitude of the potential danger to which failure to inspect would give rise) to inform the public entity whether the property was safe for the use or uses for which the public entity used or intended others to use the public property and for uses that the public entity actually knew others were making of the public property or adjacent property. [¶] (2) Whether the public entity maintained and operated such an inspection system with due care and did not discover the condition."

13

before the accident to have permitted the state employees, in the exercise of due care, to discover and remedy the situation had they been operating under a reasonable plan of inspection. In the instant case, it can be validly argued that there was a triable issue on the question of inspection, but in determining whether there is constructive notice, the method of inspection has been held to be secondary. The primary and indispensable element of constructive notice is a showing that the *obvious condition existed a sufficient period of time before the accident.*" (*Rodenhuis*, *supra,* 263 Cal.App.2d at p. 400; see also *Strongman v. County of Kern* (1967) 255 Cal.App.2d 308, 313 ["in determining constructive notice, the method of inspection is secondary; the primary and indispensable element of constructive notice is a showing that the condition existed before the accident"].)

As we have explained, Cloud presented no evidence that contrast stripes were missing from the subject wheel stop for any particular period of time before the accident, such that the alleged dangerous condition could have been discovered in the exercise of due care, whether through a formal inspection system or informal reporting by City employees or other visitors to City Hall. Having failed to present evidence of this "indispensable element," Cloud also failed to demonstrate that a triable issue of material fact remains for trial on the issue of constructive notice. (*Rodenhuis, supra,* 263 Cal.App.2d at p. 400.) Summary judgment was therefore appropriate.

2. *Creation of a Dangerous Condition*

Cloud next argues summary judgment was improper because there were triable issues as to whether the City created a dangerous condition in the parking lot, now defined as a parking lot that makes use of wheel stops or a wheel stop positioned six inches from the limit line. Cloud directs our attention to portions of the Moore declaration (many of them excluded) opining that wheel stops are inherently dangerous, and the subject wheel stop especially so, given its positioning within the parking space.

14

We need not consider these arguments or evidence because they are outside the issues framed by the pleadings.

It is well established that "the pleadings set the boundaries of the issues to be resolved at summary judgment." (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 648.) "[T]he burden of a defendant moving for summary judgment only requires that he or she negate plaintiff's theories of liability *as alleged in the complaint*; that is, a moving party need not refute liability on some theoretical possibility not included in the pleadings." (*Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493.) " 'If the opposing party's evidence would show some factual assertion, legal theory, defense or claim not yet pleaded, that party should seek leave to amend the pleadings before the hearing on the summary judgment motion.' " (*Johnson v. The Raytheon Co.* (2019) 33 Cal.App.5th 617, 636.)

A nonmoving plaintiff is not precluded from alleging *any* additional facts or issues in opposition to a motion for summary judgment. The plaintiff may allege additional facts or issues when those allegations are encompassed by the operative complaint. Generally speaking, "new factual issues presented in opposition to a motion for summary judgment should be considered if the controlling pleading, construed broadly, encompasses them. In making this determination, courts look to whether the new factual issues present different theories of recovery or rest on a fundamentally different factual basis." (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1257.)

Here, the second amended complaint alleges the subject wheel stop was dangerous "because it was painted the same black color of the asphalt." The second amended complaint thus identifies the dangerous condition as a wheel stop that was hard to see and defines the City's tortious conduct as painting the subject wheel stop black. The second amended complaint does not suggest that wheel stops are inherently dangerous or that the City created a dangerous condition by designing, constructing, or operating a parking lot that makes use of wheel stops. Nor does the second amended complaint say anything to

15

suggest that the City created a dangerous condition by installing the subject wheel stop six inches from the limit line.

Reading the allegations of the second complaint broadly, we conclude the pleadings place the visibility of the subject wheel stop at issue, but do not encompass Cloud's current theories regarding the use of wheel stops generally or the positioning of the subject wheel stop relative to the limit line. As such, Cloud could not defeat summary judgment with passages from Moore's declaration regarding the use of wheel stops or the positioning of the subject wheel stop. (*California Bank & Trust v. Lawlor* (2013) 222 Cal.App.4th 625, 637, fn. 3 ["A party may not oppose a summary judgment motion based on a claim, theory, or defense that is not alleged in the pleadings"]; see also *Nativi v. Deutsche Bank National Trust Co.* (2014) 223 Cal.App.4th 261, 290 ["Declarations in opposition to a motion for summary judgment are not a substitute for amending pleadings to raise additional theories of liability"].) Cloud never requested leave to amend to assert these new theories. Thus, the only theory of liability for the negligent creation of a dangerous condition framed by the pleadings, and the only theory the City was required to address on summary judgment, was the theory that the City negligently created a dangerous condition by painting the subject wheel stop black. We address this theory momentarily. We have no occasion to consider Cloud's unpleaded theories.[9] (*Nativi v. Deutsche Bank National Trust Co, supra,* at p. 290 [" '[S]ummary judgment cannot be *denied* on a ground not raised by the pleadings' "].)

The City presented evidence that the subject wheel stop was not painted black but was made from recycled rubber which happens to be black. Cloud made no attempt to submit evidence or raise triable issue of fact regarding the alleged painting of the subject wheel stop in her opposition to the City's motion for summary judgment, and she appears

---

[9] Likewise, and for the same reasons, we have no occasion to consider the City's design immunity defense pursuant to section 830.6.

16

to abandon the theory on appeal. We therefore conclude that summary judgment was properly granted.

## C. Evidentiary Rulings

Cloud argues the trial court erred in sustaining the City's objections to the Moore declaration, the rough transcript of Spann's deposition, the purported rough transcript of Knopf's declaration, and the photographs showing only one side of the subject wheel stop. We review evidentiary rulings made on summary judgment motions for abuse of discretion. (*In re Automobile Antitrust Cases I & II* (2016) 1 Cal.App.5th 127, 141.) We perceive no abuse of discretion.

Cloud challenges the trial court's ruling sustaining the City's objections to numerous references to building standards and pedestrian safety literature in Moore's declaration, as well as the purported excerpts of those materials attached thereto. This evidence was offered as support for Moore's opinion that wheel stops are inherently dangerous, and the subject wheel stop especially so given its positioning with the parking space. As previously discussed, neither of these theories of liability was alleged in the second amended complaint, and neither can be said to be reasonably encompassed by its allegations. The City objected to Moore's declaration on numerous grounds, including relevance. The trial court could reasonably conclude that evidence offered in support of such theories was outside the scope of the pleadings, and therefore irrelevant. (*California Bank & Trust v. Lawlor, supra,* 222 Cal.App.4th at p. 637, fn. 3 ["Evidence offered on an unpleaded claim, theory, or defense is irrelevant because it is outside the scope of the pleadings"].) The trial court's ruling excluding these passages from the Moore declaration was not an abuse of discretion.

Cloud next challenges the trial court's exclusion of the excerpts of the rough transcript of Spann's deposition, and the purported excerpt of the rough transcript of Knopf's deposition. We begin with the purported excerpt of the rough transcript of Knopf's deposition.

17

As noted, Cloud purported to rely on excerpts of the deposition testimony of Spann and Knopf.  However, Cloud appears to have submitted two copies of the excerpt of the rough draft of Spann's deposition transcript, and no excerpt, of any kind, for Knopf.  The City objected to Cloud's use of the purported excerpt of the rough draft of the Knopf deposition on numerous grounds, including the ground that the excerpt submitted was not from the Knopf deposition.  Our own review of the purported excerpt of the rough draft of the Knopf deposition reveals that the excerpt appears to have been compiled from the rough draft of the Spann deposition.  We have searched the record and have not found any sign of the transcript of the Knopf deposition, rough or otherwise.  Under the circumstances, we see no abuse of discretion in the exclusion of the purported excerpt of the rough transcript of the Knopf deposition.

No abuse of discretion appears in the exclusion of the excerpts of the rough transcript of the Spann deposition either.  Code of Civil Procedure section 2025.540, subdivision (b) provides in pertinent part:  "When prepared as a rough draft transcript, the transcript of the deposition may not be certified and *may not be used, cited, or transcribed as the certified transcript of the deposition proceedings.*"  (Italics added.)  Cloud argues that trial courts routinely rely on rough transcripts of depositions in law-and-motion practice, but offers no authority approving any such practice and makes no attempt to convince us that Code of Civil Procedure section 2025.540, subdivision (b) was inapplicable.  Cloud fails to demonstrate any abuse of discretion arising from the trial court's exclusion of the excerpts of the rough draft of Spann's deposition.

Finally, Cloud challenges the trial court's exclusion of photographs showing one-side of the subject wheel stop on or around the date of the accident.  Cloud offered the photographs to show that the subject wheel stop was entirely black, with no contrast stripes.  The City objected to this use of the photographs on grounds of relevance, lack of foundation and personal knowledge, and lack of authentication.  We cannot say the trial court abused its discretion in sustaining the City's objections.  As the City observes, the

18

photographs show only one side of the subject wheel stop, as it looked in March 2017. The photographs do not show what the subject wheel stop looked like when installed in 2003, or how it appeared to Cloud as she approached from the other side. On the record before us, the trial court could reasonably conclude that the photographs should be excluded for lack of foundation.

## III.  DISPOSITION

The judgment is affirmed.  The City is awarded its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


/S/

_____
RENNER, J.


We concur:

/S/

_____
RAYE, P. J.


/S/

_____
DUARTE, J.

19